383 So.2d 1321 (1980)
J. Minos SIMON, Plaintiff-Appellee,
v.
Bernard METOYER et al., Defendant-Appellant.
No. 7461.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1980.
Rehearings Denied May 29, 1980.
J. Minos Simon, and Thomas D. Curtis, Lafayette, Gravel, Schley & Van Dyke by Cora Schley, Alexandria, for plaintiff-appellant.
Gravel, Roy & Burnes, Anna E. Dow, Alexandria, for defendants-appellees.
Before FORET, CUTRER and DOUCET, JJ.
*1322 DOUCET, Judge.
J. Minos Simon brought this suit to collect on a promissory note given in connection with a contract for legal services. Simon, an attorney, is the payee on a note for $20,000.00, which was signed by the defendant-makers, Bernard Metoyer, A. F. Balthazar, Fred Balthazar, and Cleo Balthazar. He appeals a judgment of the district court in favor of defendants, dismissing his suit at his cost.
The undisputed facts are that in October of 1976 defendants' brother, Leslie Balthazar, was charged with first degree murder in Calcasieu Parish, Louisiana. On October 11, 1976, the accused's father J. B. Balthazar, went to Simon's office in Lafayette, Louisiana in an effort to employ him on behalf of his son. Although initially reluctant to take on the case, Simon agreed to defend Balthazar at the trial level for a fixed fee of $25,000.00, payable in advance. At that meeting, J. B. Balthazar paid $500.00 as a retainer for preliminary investigative services. He later paid $5,000.00 by check on November 1, 1976, and on December 21, 1976 defendants signed the promissory note for $20,000.00 in payment of the remainder of the fee.
Simon and his staff conducted an extensive investigation of the circumstances of the alleged crime. In addition to directing the investigation and analyzing its results, Simon filed and argued several pre-trial motions. His active representation of Leslie Balthazar continued until January 11, 1977, when he filed a motion to withdraw as Balthazar's attorney. That action followed his receipt of a letter dated January 4, 1977 and signed by Leslie Balthazar and his father, informing him that he had been discharged and that other counsel had been employed. After a representative had contacted Balthazar in the Calcasieu Parish jail and verified the discharge, Simon withdrew from the case and rendered no further services.
After Simon's dismissal, Balthazar was represented by the attorney employed by defendants in this case. On June 6, 1977, he was released from jail pending a trial set for June 20, 1977. The matter was never tried, however, and on May 16, 1979 the charges were formally dropped.
Both at the trial level and on appeal, Simon has argued that the issue in this case is whether or not he is a holder in due course and, as such, entitled to payment on the note. Defendants maintain that he is not a holder in due course and urge as a defense the failure of the cause for the note's issuance. In addition, they argue that a fee of $25,000.00 is excessive in light of the services rendered by Simon and that it should, therefore, be reduced.
The trial judge agreed with the position taken by defendants. His conclusions as to the issues and the applicable law are set out in his written reasons for judgment as follows:
"The plaintiff contends that the issue here is whether or not he is a holder in due course entitled to payment on the note. The Court, however, views the issues differently. Based on the above facts, the Court finds that the promissory note was given in contemplation of legal services. Under established principles of law and ethics, an attorney can only recover for legal fees actually earned. Therefore, the Court considers the question here to be the value of Simon's services between October 11, 1976 and January 4, 1977.
"The appointment of an attorney is a mandate revocable at the client's will. LSA-C.C. Art. 3028; Prophit v. McSween, Brook & Bolton, 347 So.2d 11 ([La.App.] 3rd Cir. 1977). An attorney is required to withdraw from representation if his client discharges him, Code of Professional Responsibility (1971), Disciplinary Rule 2-110(B)(4); in the event of withdrawal, the attorney has no right to retain fees not earned, Ibid, Disciplinary Rule 2-110(A)(3). When an employment contract between attorney and client is revoked, the attorney is entitled to recover for services actually performed on the basis of quantum meruit. The attorney has the burden of proving the value of his services and the extent of his actual expenses. Smith v. Westside Lines, Inc., 313 So.2d 371 ([La.App.] 4th Cir. 1975); Guilbeau v. Fireman's Fund Insurance *1323 Company, 293 So.2d 216 ([La.App.] 3rd Cir. 1974); Kramer v. Graham, 272 So.2d 716 ([La.App.] 3rd Cir. 1973); Chiasson v. Law Firm of Dragon and Kellner, 335 So.2d 87, 90 ([La.App.] 3rd Cir. 1976).
"Plaintiff has attempted to avoid the application of the above principles by ignoring the origin of this note and the contractual relationship surrounding its issue. Toward this end, he urges the application of ordinary commercial laws. In light of the fiduciary obligation involved, the Court finds those rules inapplicable. Even if they did apply, plaintiff would still be subject to defendant's [sic] defense as he has not attained holder-in-due-course status under LSA-R.S. 10:3-302[1](a) and 3-303(a). Ashley v. Coleman, 219 So.2d 574 ([La.App.] 4th Cir. 1969)."
The provisions of the Code of Professional Responsibility[1], which were cited by the trial judge, state:
"DR 2-110. Withdrawal from Employment.
(A) In general.
* * * * * *
(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.
(B) Mandatory withdrawal.
A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
* * * * * *
(4) He is discharged by his client."
Clearly, if an attorney is prohibited from keeping any part of a pre-paid fee that has not been earned because of his discharge by his client, he is also prohibited from collecting any part of a fee that he has not earned for that reason. To the extent that the commercial laws would allow collection of the entire fee in such a case, they are in direct conflict with the above provision of the Code of Professional Responsibility.
The effect to be given to the Code of Professional Responsibility when its provisions conflict with legislative enactments was recently discussed by the Louisiana Supreme Court in its opinion on rehearing in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978). The court stated:
"In deciding this case we recognize as a primary consideration the Court's duty to assert the authority conferred by the Constitution to regulate the practice of law, which stems from the grant of original exclusive jurisdiction of disciplinary proceedings against a member of the bar. La.Const. Art. V, § 5(B); see Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). As set forth more fully in the dissent on original hearing, this Court's prevailing judicial authority resulted in the adoption and promulgation of the Articles of Incorporation of the Louisiana State Bar Association, which Articles came to incorporate the Code of Professional Responsibility, in lieu of the Canons of Professional Ethics. The Code of Professional Responsibility which regulates attorneys' practices has been recognized as having the force and effect of substantive law. As a result, these rules set forth by virtue of the Court's exercise of its prevailing judicial authority override legislative acts which tend to impede or frustrate that authority; only legislative enactments in this area which aid the Court's inherent powers will be approved."
373 So.2d 115.
Saucier dealt with a contingent fee contract, which had been drawn and recorded in conformity with LSA-R.S. 37:218. The Court found that that provision was susceptible of an interpretation, which was harmonious with the Code of Professional Responsibility. However, it is clear from the above language that if there had been a conflict between the two, the rules of the Code of Professional Responsibility would *1324 have been applied to the exclusion of the statute.
In light of the above, we find it unnecessary to discuss Simon's alleged holder-in-due-course status or his arguments with respect to the commercial laws. We conclude, as did the trial judge, that although Simon is entitled to remuneration for the services that he actually rendered, he cannot rely on the commercial laws to collect a fee that he has not entirely earned, due to his discharge by his client.
As the trial judge noted, the courts of this state have uniformly held that the appointment of an attorney is a mandate revocable at the client's will. LSA-C.C. Art. 3028; Prophit v. McSween, Brook and Bolton, 347 So.2d 11 (La.App. 3rd Cir. 1977), writ denied 350 So.2d 902 (La.1977); Fiasconaro & Fiasconaro v. Orlando, 342 So.2d 1261 (La.App. 4th Cir. 1977). The general rule is that a client has the right to discharge his attorney with or without cause, and upon discharge of the attorney, the contract is at an end. Kramer v. Graham, 272 So.2d 716 (La.App. 3rd Cir. 1973). The contract provision concerning compensation is, therefore, unenforceable. Lynch v. Burglass, 286 So.2d 170 (La.App. 4th Cir. 1973); Cabral v. Heitkamp, 252 So.2d 353 (La.App. 4th Cir. 1971). However, at the time of his discharge, the attorney is entitled to compensation for services actually rendered on a quantum meruit basis.
The rule that a discharged attorney must seek his compensation on a quantum meruit basis has been applied uniformly, regardless of whether the fee arrangement with the client called for a contingent fee, Chiasson v. Law Firm of Dragon & Kellner, 335 So.2d 87 (La.App. 3rd Cir. 1976); Kramer v. Graham, supra; Wright v. Fontana, 290 So.2d 449 (La.App. 2nd Cir. 1974), or a fixed fee, Lynch v. Burglass, supra; Schiro v. Perkins, 240 So.2d 920 (La.App. 4th Cir. 1970), writ denied, 257 La. 458, 242 So.2d 578 (1971), or as in this case, a fixed fee paid in advance by means of a promissory note, Cabral v. Heitkamp, supra.
The only departure from this long-established general rule has been the case of Saucier v. Hayes Dairy Products, Inc., supra. As we noted earlier, that case dealt with a contingent fee contract drawn and recorded in conformity with LSA-R.S. 37:218. Because of the peculiar considerations associated with contingent fee contracts and the fact that the attorney in that case has complied with and relied on LSA-R.S. 37:218, the court devised a different means of determining the value of the attorney's claim, which was based on the contract. The instant case is distinguished from Saucier in that it does not involve a contingent fee contract or special legislation aimed at protecting the attorney's rights under such a contract. We, therefore, agree with the trial judge's conclusion that quantum meruit is the proper basis for determining the value of Simon's claim.
In cases where an attorney is to be awarded compensation on a quantum meruit basis, the attorney has the burden of proving the value of his services and the extent of his actual expenses. Chiasson v. Law Firm of Dragon & Kellner, supra. Simon introduced his entire file on the criminal case into evidence, and testified generally concerning the services that he rendered and the expenses that he incurred. On the basis of that evidence, the trial judge concluded that the $5,500.00 that he had already received was adequate compensation for those services, and for that reason dismissed the suit.
The question of the value of legal services rendered by an attorney is one that comes particularly within the expertise of the trial judge. Fiasconaro & Fiasconaro v. Orlando, supra; Lynch v. Burglass, supra. We are, therefore, reluctant to disturb the trial judge's assessment of the value of Simon's claim. However, after carefully reviewing the evidence in the record before us, we conclude that his finding that Simon's services were worth no more than $5,500.00 is manifestly erroneous.
Simon's file contains 532 pages of research, prepared pleadings, statements, etc. Much of it consists of transcripts of interviews with potential witnesses and summaries of those interviews prepared by Simon for use at trial. In addition to his research and his investigative work, the superior *1325 quality of which is acknowledged by counsel for defendants, Simon filed four pretrial motions and wrote a number of letters in connection with the case.
In view of the serious nature of the criminal charge against Leslie Balthazar, the time expended by Simon and his staff in preparation for trial, and the high degree of skill reflected in his work product, we believe that the minimum amount to which he is entitled for his services is $10,000.00. Although the note is unenforceable for the reasons set out earlier in this opinion, defendants' offer to pay for those services and Simon's acceptance of it created an enforceable contract under which he is entitled to recover.
Accordingly, the judgment appealed is reversed and set aside and it is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, J. Minos Simon, and against defendants, Bernard Metoyer, A. F. Balthazar, Fred Balthazar, and Cleo Balthazar, jointly, severally and in solido, in the sum of $4,500.00 with legal interest from judicial demand. All costs of this appeal are assessed against the defendants.
REVERSED AND RENDERED.
NOTES
[1] Louisiana Code of Professional Responsibility, Articles of Incorporation, Louisiana State Bar Ass'n, Art. XVI, La.R.S. 37, Ch. 4, app.