510 So.2d 1289 (1987)
Catherine R. KRAMPE, Plaintiff-Appellee,
v.
Edward J. KRAMPE, Defendant,
Perrin, Landry, deLaunay, Durand & J. Minos Simon, Intervenors-Appellants.
No. 86-981.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
Writ Denied October 16, 1987.
Roy and Carmouche, H. Purvis Carmouche, Jr. and Harmon F. Roy, Lafayette, for defendant.
Voorhies and Labbe, John W. Hutchinson, Perrin, Landry, etc., Gerald C. deLaunay, Lafayette, Leslie J. Schiff of Sandoz, Sandoz and Schiff, Opelousas, for plaintiff-appellee.
*1290 Before FORET, KNOLL and CULPEPPER[*], JJ.
FORET, Judge.
This is a suit involving a disputed amount of attorney's fees pursuant to a contingency fee contract.

FACTS
The history of this case is somewhat lengthy. Plaintiff, Catherine R. Krampe, and defendant, Edward J. Krampe, were judicially separated on October 3, 1980. A community property partition was effected on October 6, 1980. The net value of the community property partition to Mrs. Krampe was $323,668.
On August 18, 1981, Mrs. Krampe employed J. Minos Simon, intervenor (hereinafter called Simon), to represent her and to take such legal action as he deemed necessary to revoke the community property settlement and partition agreement between Mrs. Krampe and her former husband. Mrs. Krampe and Simon signed a written Contract of Employment providing that Krampe would pay Simon attorney's fees in return for the legal services to be rendered by him. The fee agreed upon was "40% of recovery." The agreement was signed by both parties. During the summer of 1982, with Mrs. Krampe's approval, Simon associated the law firm of Perrin, Landry, deLaunay, and Durand (hereinafter referred to as PLDD) to handle the actual litigation. Pursuant to that agreement, Simon, by written assignment, assigned a 50% interest in the employment contract which he had with Mrs. Krampe. The employment contract and assignment of an interest to PLDD were later recorded in the Clerk of Court's office of Lafayette Parish, Louisiana.
After lengthy litigation, judgment was rendered on June 24, 1984, declaring the October 6, 1980 partition agreement between the Krampes null and void on the ground of lesion beyond moiety. The trial court rendered judgment in favor of Mrs. Krampe in the amount of $625,638.14. The trial court judgment further provided that should defendant fail to make a cash payment in that amount within a designated time period, the plaintiff, Mrs. Krampe, would be granted a one-half interest in all property comprising the community. Mr. Krampe failed to make the cash payment, and the judgment became executory. Thereafter, Mr. Krampe appealed to this Court. During the pendency of that appeal bearing docket # 84-831, Mrs. Krampe filed suit on October 4, 1984, seeking partition of the former community property under the provisions of La. R.S. 9:2801. Mrs. Krampe asserted that the net value of the community was $4,576,037.30. While the case was on appeal, Mr. Krampe made a settlement offer, ratifying the previous settlement of 1980 and additionally offering a $350,000 cash payment to Mrs. Krampe, which settlement offer Mrs. Krampe was willing to accept. However, after discussing the settlement offer with Simon and Gerald deLaunay of PLDD, she was strongly advised against accepting the offer, and the attorneys informed her that they would not consent to such a settlement.
On May 1, 1985, Mrs. Krampe terminated the legal services of Simon and PLDD by written letter and employed Leslie Schiff to represent her in concluding the settlement agreement. Mrs. Krampe and Mr. Krampe then entered into a written ratification and settlement agreement providing that each party ratify the October 6, 1980 settlement and partition agreement which they had previously signed according to the terms and conditions therein. Additionally, in order to conclude the entire matter, including the dismissal of the appeal by Mr. Krampe in this Court as well as the satisfaction of the judgment rendered by this Court, Mr. Krampe agreed to pay Mrs. Krampe $350,000 in cash.
Mr. and Mrs. Krampe filed a joint motion and order seeking approval of the proposed settlement agreement between the two parties. *1291 The ratification executed by Mr. and Mrs. Krampe contains a resolutory condition nullifying the entire agreement in the event that either court holds that the attorney's fees exceed $140,000 or 40% of $350,000.
The law firm of J. Minos Simon, Ltd. and PLDD intervened in the lawsuit to have their interests in the community formerly existing between Mr. and Mrs. Krampe recognized. A rule to show cause why the proposed compromise and settlement agreement between the Krampes should not be approved was filed on behalf of the Krampes jointly against the intervenors, J. Minos Simon, Ltd. and PLDD. Additionally, a motion for summary judgment was filed on behalf of the Krampes jointly against intervenors, and a motion for summary judgment was filed on behalf of the intervenors against the Krampes jointly. At the hearing on the petition of intervention and motion for summary judgment filed by Simon and PLDD, Mrs. Krampe endorsed the check of Mr. Krampe in the amount of $140,000 made payable to the Clerk of Court to be deposited in its registry as a tender to intervenors, representing attorney's fees due them as a result of their representation of her in the matters filed against Mr. Krampe. However, Simon and PLDD refused to accept the tender as payment in full.
The trial court denied the Krampes' joint motion seeking approval of the proposed settlement agreement because it found no authority in the Civil Code or in the jurisprudence to indicate that judicial approval was either necessary or permitted to effectuate a valid compromise. It furthermore denied all motions for summary judgment relative to the intervention. Consequently, the issues presented by intervenors were referred to the merits.
The trial court took the intervention proceedings under advisement on January 3, 1986. Reasons for judgment were rendered on January 9, 1986, concluding that the phrase "40% of recovery" as used in the employment contract between Mrs. Krampe and Simon meant 40% of what was recovered for Mrs. Krampe over and above what she already had; that $140,000 was a reasonable fee in this case and that anything in addition to that would be excessive and unreasonable; and that intervenors were not entitled to a privilege amounting to a 40% interest in the property acquired by Mrs. Krampe. Thereafter, intervenors took this appeal.
ISSUES
(1) While litigation is pending, and Mrs. Krampe's attorneys have been discharged, may the former attorneys prevent Mrs. Krampe from executing a settlement agreement with her former husband without their consent?
(2) What fees are due intervenors as a result of their professional services performed pursuant to an employment contract executed by Simon and Mrs. Krampe?
Initially, we recognize that compromise is favored in the law. Meinerz v. Treybig, 245 So.2d 557 (La.App. 3 Cir.1971), writ denied, 258 La. 580, 247 So.2d 395 (1971). The intervenors may not prevent the Krampes in the principal cause of action from settling their differences by means of a settlement agreement. La.R.S. 37:218 permits an attorney to contractually prohibit his client from settling, compromising, releasing, discontinuing, or otherwise disposing of a suit or claim without the written consent of the attorney. However, in Scott v. Kemper Insurance Co., 377 So.2d 66 (La.1979), our Supreme Court held that an attorney "... has no right to interfere or nullify the settlement which his former client has made, ... or chooses to make." Therefore, as in the Kemper case, intervenors cannot interfere with or nullify the settlement which their former client makes or chooses to make.
The policy of the law generally is to encourage settlements. Matter of Jackson Brewing Co., 624 F.2d 599 (5th Cir.1980). Furthermore, settlements will not be invalidated *1292 lightly in the absence of bad faith, error, or fraud. Succession of Teddlie, 385 So.2d 902 (La.App. 2 Cir.1980), writ denied, 393 So.2d 742 (La.1980). The mere fact that a bad bargain has been made is not of itself a sufficient ground for invalidating a compromise. Saunders v. New Orleans Public Service, Inc., 387 So.2d 603 (La. App. 4 Cir.1980), writ denied, 394 So.2d 614 (La.1980).
Intervenors-appellants argue that Mrs. Krampe had no right to settle without their consent. Their contention is erroneous. A litigant has a right to settle and compromise a claim and this right cannot be diminished or restricted by previous counsel. Kemper, supra. Clauses in a contract between attorney and client prohibiting a settlement by the client without his attorney's consent are in general held unenforceable as against public policy. Lewis v. S.S. Baune, 534 F.2d 1115 (5th Cir.1976), rehearing denied, 545 F.2d 1299 (5th Cir. 1976). However, La.R.S. 37:218 permits a contractual stipulation in a contract that neither the attorney nor the client may settle without written consent of the other.
Quite obviously, Simon and PLDD regretted seeing Mrs. Krampe relinquish her rights to property on what they perceived to be an insubstantial basis. Because of PLDD's and Simon's refusal to agree with Mrs. Krampe's decision to accept Mr. Krampe's settlement, Mrs. Krampe discharged her attorneys. The appointment of an attorney is a mandate revocable at the client's will. The general rule is that a client has the right to discharge his or her attorney with or without cause and that upon discharge of the attorney, the contract is at an end. Simon v. Metoyer, 383 So.2d 1321 (La.App. 3 Cir.1980), writ denied, 389 So.2d 1338 (La.1980); Prophit v. McSween, Brook & Bolton, 347 So.2d 11 (La.App. 3 Cir.1977), writ denied, 350 So.2d 902 (La.1977); Kramer v. Graham, 272 So.2d 716 (La.App. 3 Cir.1973).
In Simon v. Metoyer, supra, the court stated that a discharged attorney must seek compensation on a quantum meruit basis regardless of whether the fee arrangement called for a contingent fee or a fixed fee paid in advance by means of a promissory note. Simon, at 1324, and cases cited therein. The departure from that long established general rule reiterated in Simon v. Metoyer, supra, has been the case of Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978).
The Saucier court, on rehearing, held that the amounts prescribed in a contingency fee contract, not quantum meruit, is the proper frame of reference for fixing compensation for an attorney prematurely discharged without cause. The basis of this decision was to prevent a client from reaping any possible unfair advantage resulting from the discharge of his attorney. Obviously that is not the case here. Mrs. Krampe testified that she discharged Simon and PLDD, requiring the hiring of yet another attorney, thereby incurring additional attorney's fees because they refused to respect her wishes to settle with her former husband.
Additionally, Simon asserts that he has a vested interest in Mrs. Krampe's judgment. However, in Kinsey v. Dixon, 467 So.2d 862 (La.App. 2 Cir.1985), the court held that a contingency fee contract is a mere interest in the exercise of the power of mandate and is not a power coupled with an interest in the property. Likewise, in Calk v. Highland Construction & Manufacturing, 376 So.2d 495 (La.1979), the court held that it followed the Saucier interpretation. Furthermore, it stated that the Code of Professional Responsibility provides that a lawyer shall not acquire a proprietary interest in the cause of action pursuant to Canon 5, Disciplinary Rule 5-103. Therefore, the Calk court reasoned that the interest acquired by an attorney, under La.R.S. 37:218, is a privilege rather than an ownership right. Therefore, it is obvious that Simon, pursuant to R.S. 9:5001, has a privilege on the amounts recovered by Mrs. Krampe to the extent of his earned fee.
The jurisprudence makes it clear that Simon and PLDD do not have a right to *1293 interfere with or nullify the settlement which the Krampes executed. Furthermore, their rights with respect to their fee in this case is limited by the factors set forth in the Code of Professional Responsibility, Canon 2, Disciplinary Rule 2-106. Disciplinary Rule 2-106 regarding fees for legal services in effect provides that an attorney's fee agreed to contractually may not be excessive and is subject to judicial scrutiny. Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987); Moody v. Arabie, 498 So.2d 1081 (La.1986); Lancaster v. Petroleum Corp. of Delaware, 491 So.2d 768 (La.App. 3 Cir.1986).
Simon testified that when the employment contract was executed Mrs. Krampe did not have funds available to pay him a legal fee based on an hourly rate. Therefore, he entered into a contingency fee arrangement. He testified that he explained to Mrs. Krampe that whatever property he should acquire for her in rescinding the previous community settlement would be subject to his fee of 40%. On the other hand, Mrs. Krampe understood that 40% of recovery would mean 40% of whatever Simon recovered for her over and above what she already had. The trial court held that the reasonable interpretation of the pertinent language in the employment contract was that Simon was to be paid only 40% of what he recovered for Mrs. Krampe over and above what she already had by virtue of the previous community settlement agreement. The trial court found that to hold otherwise would be to place Mrs. Krampe in a far worse position than she was in had she simply not sought to rescind the previous community settlement agreement.
Simon additionally testified that he did not keep accurate time records, but Gerald deLaunay testified that he estimated that his firm, PLDD, spent in excess of 1000 hours, although there is no detailed itemized record to substantiate that claim. The trial court held that the type of employment contract entered into between Mrs. Krampe and Simon is sanctioned by law; however, the court found that attorneys cannot contract and charge a client for legal fees which are excessive. Furthermore, the court held that under the code of ethics, the fees must be reasonable. The court thereafter took into consideration the length of the trial and the complexities involved and found the total attorney's fees due the intervenors to be $140,000, 40% of $350,000, and that any fee in excess thereof would be excessive and unreasonable. The court awarded $29,057.80 as expenses. The trial court's findings and holding are supported by the record and the law. Once a client has exercised the right to terminate the contract of employment, whether in writing or otherwise, the fee provisions of the contract become unenforceable, and the attorney's only claim is in quantum meruit, subject to judicial review of reasonableness. Simon, Corne & Block v. Duke, 429 So.2d 507 (La.App. 3 Cir.1983).

CONCLUSION
The judgment of the trial court is affirmed in all respects. As a result of our finding the trial court correct in its award of $140,000, plus expenses in the amount $29,057.80, as proper attorney's fees in this case, the ratification of the community property agreement operates as a valid settlement of Mr. Krampe's pending appeal, 510 So.2d 1294 (La.App. 3 Cir.1987). Consequently, that appeal is now moot pursuant to the settlement reached in the ratification of the community property agreement, and accordingly is dismissed.

DECREE
The judgment of the trial court is affirmed for the foregoing reasons. All costs of this appeal are assessed against intervenors.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, Judge Pro Tempore.