AMERICAN BANK AND TRUST COM-
PANY, Federal Deposit Insurance
Company, in its Corporate Capacity

v.

A.J. TULLOS, Jr., et al.

Civ. A. No. 86–3312 "L".

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Dec. 19, 1988.

David S. Rubin, Baton Rouge, La., for plaintiffs.

William H. Patrick, III, Baton Rouge, La., for defendants.

### FINDINGS OF FACT

DUHE, District Judge.

1. American Bank & Trust Company ("American Bank") held a $2 million promissory note (the "Tullos note") executed in December 1981 by A.J. Tullos, Jr.—1979, a partnership in commendam.

2. In January 1984, after the Tullos note was in default, American Bank retained Domengeaux & Wright ("D & W")

on an hourly basis to recover against the guarantors ("defendants") of the note.

3. Suit was filed by American Bank against the defendants in January 1984 in Louisiana state court (the "Tullos litigation").

4. In October 1985, Gordon, Arata, McCollam, Stuart & Duplantis ("GAMSD") was enrolled as additional counsel for American Bank in the Tullos litigation. They were retained on an hourly basis.

5. At its December 3, 1985 meeting, American Bank's Board of Directors authorized the retention of D & W and GAMSD on a 25% contingency basis, in lieu of the hourly rate structure previously agreed to.

6. A written contingency fee contract between American Bank and D & W and GAMSD was executed on May 28, 1986 and was properly recorded on June 4, 1986.

7. In September 1986, the Commissioner of Financial Institutions for the State of Louisiana declared American Bank to be in an unsafe and unsound condition to continue in the business of banking. Pursuant to LSA–R.S. 6:391(B), the Commissioner appointed the Federal Deposit Insurance Corporation ("FDIC") to act as a receiver and liquidator of American Bank.

8. Pursuant to LSA–R.S. 6:391(C), upon the acceptance by the FDIC of its appointment as receiver and liquidator, all of the assets of American Bank vested in the FDIC in its receivership capacity.

9. In September 1986, pursuant to an order issued by the Louisiana state court, the FDIC, in its corporate capacity, acquired from the FDIC, in its receivership capacity, the assets of American Bank, including the Tullos note.

10. As the interested party in prosecuting the claims and defenses formerly made by American Bank, the FDIC was substituted for American Bank as plaintiff in the Tullos litigation.

11. The FDIC terminated the representation of D & W and GAMSD in October 1986 and retained Kantrow, Spaht, Weaver & Blitzer ("KSWB") to handle the Tullos litigation. D & W and GAMSD intervened in the Tullos litigation claiming their fee.

12. The Tullos litigation was removed to this Court on October 30, 1986.

13. In satisfaction of the Tullos litigation, two agreements of compromise, settlement and general release were entered into on June 30, 1988, between the FDIC and the defendants (the "Tullos Settlement" and the "Cournoyer Settlement").

14. The settlement agreements were negotiated by the FDIC and KSWB. GAMSD and D & W performed no services in this matter after the date of their termination in October 1986.

15. The FDIC has received $643,381 from the Tullos Settlement. Under the Cournoyer Settlement, the FDIC will be paid a total of $748,184 commencing November 30, 1988.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331.

2. Intervenors action is in the nature of an *in rem* action against the proceeds of the settlement agreements.

3. LSA–R.S. 37:218 provides:

By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution or defense of which he is employed, whether the claim or suit be for money or for property....

A privilege inures in favor of an attorney who has a written contingent fee contract on any recovery obtained by settlement. *Calk v. Highland Const. & Mfg.*, 376 So.2d 495, 499 (La.1979); *Scott v. Kemper Ins. Co., Inc.*, 377 So.2d 66 (La.1979). Intervenor's contingent fee contract is in writing and recorded in accordance with the requirements of LSA–R.S. 37:218.

4. LSA–R.S. 37:218 contemplates that the written contingent fee contract may be executed after services have been performed. *Cf. Calk v. Highland Const. & Mfg.*, 376 So.2d at 500; *Walton v. Walton*, 490 So.2d 1093, 1095 (La.App.1986); *Roberts v. Hanover Ins. Co.*, 338 So.2d 158, 160 (La.App.1976). Thus, the contingency

fee contract entered into between American Bank and Intervenors was binding on the parties December 3, 1985, the date of authorization by American Bank's Board of Directors.

5. Liens arising by operation of state law are not invalidated by the receivership of a bank. *Webster v. Sweat,* 65 F.2d 109, 110 (5th Cir.1933); *Calcasieu Nat. Bank v. Bank of Abbeville & Trust Co.,* 83 F.2d 742, 744 (5th Cir.1936).

6. Security interests created under state law survive the insolvency of a bank and remain as valid encumbrances despite the purchase and assumption of the encumbered asset by the FDIC, in its corporate capacity. *Kile v. Federal Deposit Ins. Corp.,* 641 F.Supp. 723 (E.D.Tenn.1986).

7. Courts applying Louisiana law have the power and obligation to review the reasonableness of attorney fees. LSA–Const. Art. 5, § 5(B); State Bar Articles of Incorporation, Art. 16, Code of Prof.Resp. Rule 1.5, LSA–R.S. foll. 37:219; *Saucier v. Hayes Dairy Products, Inc.,* 373 So.2d 102, 105 (La.1979); *Central Progressive Bank v. Bradley,* 502 So.2d 1017 (La.1987).

8. Once the FDIC was named receiver of American Bank, it was entitled to name the counsel of its choice to handle the Tullos litigation, thus D & W and GAMSD were not dismissed without cause.

An attorney who has been justifiably dismissed by his client is entitled to be reimbursed for his services on a quantum meruit basis. *Fowler v. Jordan,* 430 So.2d 711, 715 (La.App.1983). When a fee is to be split between attorneys, it should be "[a]pportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors." *Saucier v. Hayes,* 373 So.2d at 118.

9. Factors to be considered as guides in determining the reasonableness of a fee include:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

State Bar Articles of Incorporation, Art. 16, Code of Prof.Resp.Rule 1.5, LSA–R.S. foll. 37:219; *Saucier v. Hayes,* 373 So.2d at 116.

10. Intervenors have the burden of proving the value of their services and the extent of their actual expenses. *Simon v. Metoyer* 383 So.2d 1321, 1322 (La.App. 1980), *writ denied* 389 So.2d 1338 (1980); *Chiasson v. Law Firm of Dragon and Kellner,* 335 So.2d 87 (La.App.1976).