701 So.2d 720 (1997)
Thomas P. KEENE, Plaintiff-Appellant,
v.
Edmund M. REGGIE and Doris B. Reggie, Defendants-Appellees.
No. 96-740.
Court of Appeal of Louisiana, Third Circuit.
October 22, 1997.
*722 Daniel C. Hughes, Lafayette, for Thomas P. Keene.
John Franklin Craton, Edmund M. Reggie, et al., Crowley, for Edmund M. Reggie, et ux.
Before DOUCET, C.J., and COOKS and SULLIVAN, JJ.
COOKS, Judge.
Thomas Keene filed suit to collect a loan, evidenced by a promissory note, to his attorney, Edmund Reggie. He also named Mr. Reggie's wife as a defendant, claiming the indebtedness was a community obligation. Reggie, in response, admitted he signed the note but denied defaulting on it. He alleged Keene executed a "Contract for Legal Services" on the same date he signed the promissory note sued upon and, therein, agreed to retain his services and provide him legal work sufficient to satisfy Reggie's obligation on the loan. Because Keene failed to provide him work as contracted, Reggie asserted the debt Keene sought to collect was not due and he was exonerated from paying it. Mrs. Reggie, also answering the suit, asserted the debt was not a community obligation and she did not personally undertake to pay any portion of it.
After trial on the merits, the district court dismissed Keene's claims with prejudice finding the "Contract for Legal Services" was enforceable. The court further held Reggie was entitled to fully offset the loan, and neither the community nor Mrs. Reggie owed any sum on the note. Keene now appeals these findings and asserts the trial court's rulings were erroneous.

RELEVANT BACKGROUND FACTS
On March 5, 1986, Thomas Keene signed a check authorizing Acadia Savings & Loan to pay his attorney, Edmund Reggie, $311,753.00. On March 16, 1987, more than a year later, Reggie signed a "Promissory Note and Agreement of Liability by Borrower" acknowledging the payment from Keene was a loan and agreeing to repay Keene over a ten year period with interest at the rate of seven percent per annum payable annually; and, in the event he defaulted on the note, to pay an additional fifteen percent as attorney's fees for collection of the indebtedness.
Keene, on that same date, also signed a document captioned "Contract For Legal Services" which recited in relevant sections:
I.
Appearers declare that First Party [Thomas P. Keene] employs, retains and contracts with Second Party [Edmund M. Reggie] to act for and as First Party's attorney, lawyer and counselor, on a non-exclusive basis for both of them.
II.
The term of this Agreement is ten (10) years from the date hereof.
III.
Consideration shall be paid First Party to Second Party as follows:
a) As a retainer for which Second Party shall be available and willing to represent First Party, but without handing any special assignment or performing *723 any specific legal work, First Party shall compensate Second Party a sum of at least Twenty-two Thousand and No/100 ($22,000.00) Dollars annually, either divided into twelve (12) monthly payments or in one annual payment, as determined by First Party; and
b) For legal advice or performing specific legal work done for him, First Party shall compensate Second Party at an hourly rate of One Hundred Fifty and No/100 ($150.00) Dollars plus fees, at cost of Second Party, incurred for additional attorneys, paralegal assistants and/or other experts whose services are required or proper to be engaged to perform the services furnished hereunder by Second Party and determined need by him.
IV.
First Party guarantees and warrants that payments shall inure to Second Party during the term of this Agreement to a total of at least Three Hundred Thousand and No/100 ($300,000.00) Dollars and such payments to Second Party by First Party shall be more than and above the retainer provided in Paragraph III(a) hereinabove and, further, such payments shall be computed net to Second Party above all costs for other professionals employed under the provisions of Paragraph III(b) hereinabove.
In the event of Reggie's death or inability to properly function due to ill health or other disability, the contract further obligated Keene to employ a member of Reggie's firm or one of his three children who are licensed attorneys.
Keene and Reggie were not strangers; for years, Reggie performed work for Thomas Keene and Ivy Creel, both of whom were successful entrepreneurs who often sought his advice and other legal services on business matters. Though Keene and Creel advanced substantial loans to Reggie, they did not request nor deem it necessary to contemporaneously reduce to writing their "understandings and Reggie's undertaking" regarding repayment of the cash extensions. We gather from the record their relationship was cemented by mutual trust and respect. Reggie prepared the employment contract and the promissory note. These "writings" were prompted by a desire shared by the three gentlemen to "put an end" to certain rumors and suspicions uttered by "some individuals" who questioned the "real motives" underlying the loans to Reggie. On March 13, 1987, the men met in Baton Rouge and, as reflected in minutes taken at that meeting, expressed:
... They felt the facts are clear to them but seem to be twisted by some other parties who were not part of the transactions when they occurred in Spring, 1986. For this clarity of truth, all parties wanted the circumstances and terms of the loan to be spelled out in the notes so the obligation would carry with it the explanation of what did nor did not become a part of said loans and could therefore be clearly understood.
Creel and Keene stated they wished it could be cleared up beyond doubt that each of them loaned funds to Reggie as a sign of friendship to him at a time they understood him to have a need for such funds, on livable terms, and since they had the funds on hand, they were pleased to make loans to him, assisting them in furthering a long time relationship in which they and Reggie could have further close friendship and business ties to each other.
Further, in view of their desire to assist Reggie with the loans, they also foresaw an employment of him as legal counsel over the long term during which he can earn sufficient funds to repay the loans. They feel having Reggie's legal advice is going to be worth it for them during the forthcoming decade in dealing with other legal matters. Conversely, Reggie sees the advantage of having the loans and the opportunity to earn legal fees over the years to assist in the loan repayment and in keeping in close business relationship with Creel and Keene.
Creel and Keene asked Reggie to produce a legal service contract which would express in writing their agreement to engage him as their attorney over the next *724 ten (10) years and to assist him in repaying the debt set out in the loans.
All went well between Reggie and Keene for three years following the meeting and signing of the documents. In fact, on March 16, 1987, March 2, 1988, and March 11, 1989 Keene signed a form captioned "Receipt and Off-Set" reciting:
This is a receipt for $22,000.00 in interest paid by Edmund M. Reggie to Thomas P. Keene, the payment being made in legal services rendered and acknowledged (but not with cash); and this is a receipt of all sums due to Edmund M. Reggie from Thomas P. Keene for legal services contracted for (but not with cash). This receipt represents an off-set between parties and satisfaction for sums owed each other as of this date.
The amount credited in the receipts by Keene satisfied his obligation to pay Reggie an annual retainer fee in the same amount and equaled the seven percent annual interest owed by Reggie on the promissory note.
The Reggies obtained a judgment terminating their community of acquets and gains on December 21, 1989. In January of 1990, Edmund Reggie gave Keene $2,500 which he asserts was not intended by him as payment on the loan but just as an extension of cash to a friend. The parties agree, however, in early 1990 Keene began demanding that Reggie pay him money to extinguish the loan. Though the parties attempted to amicably resolve their differences, they were not able to strike accord. On July 19, 1991, Keene formally demanded, by letter addressed to Edmund Reggie, payment of the note in full, less $2,500 representing the cash advanced in January 1990, together with seven percent interest and fifteen percent attorney fees. Reggie failed to respond to the demand. On October 10, 1991, Keene filed suit on the note against Reggie and his wife.

LAW & DISCUSSION
We are satisfied Reggie has sufficiently urged compensation of obligations as a defense to Keene's action. The principle has been applied by the courts "whenever [a] defendant sought compensation regardless of the name given to the pleacompensation, set-off, reconventionand without regard to the kind of compensation involved."
The articles on compensation now appear in the Civil Code Book III, Title II, Chapter 6 which recites the various methods by which obligations may be extinguished. The articles substantially trace the former articles on compensation found in the 1870 Civil Code, except the new provisions incorporate the French doctrine which recognized three kinds of compensation: legal, conventional, and judicial. As expressed in the 1984 Revision Comments, "[t]he Code Napoleon only contemplate[d] the first kind [legal] although without barring the other, and so [did] the Louisiana Civil Code of 1870." Articles 1901 and 1902 now provide for compensation by agreement and compensation by judicial declaration. These articles merely codify former jurisprudence which adopted the French doctrine in full although only legal compensation was expressly mentioned in the former Louisiana Civil Codes.
In Tolbird v. Cooper, 143 So.2d 80, 82-83, 243 La. 306, 312-13 (1962) the Louisiana Supreme Court, excerpting comments from several authorities, explained the necessity and purpose for compensation as follows:
The practicality and common sense of this method of extinguishing obligations and the necessity for it, Domat sets out with clarity in his treatise on the civil law:
"It often happens that the same person is at the same time both creditor and debtor to another * * *it is natural not to make so many payments as there are debts, so as for one of the two to pay to the other what he owes him, and to receive back again that which is due to him; but such debts are compensated, that is, every one retains in payment of what is due to him that which he owes to the other, whether it be for the whole debt, if the sums are equal, or by deducting a lesser debt out of a greater. So that compensations are nothing else but two reciprocal payments, which are made at the same time, the debtors giving to one another no other thing but their bare acquittance, the debts being annulled for so much as shall be found to be acquitted by the compensation. *725 "The use of compensation is necessary to avoid the circuit of two payments, which would happen if each of the two persons who compensate should be obliged first to pay what he owes, and then to receive back again what is due to himself. And it is natural, without fetching this compass, for every one which he owes on his part. Thus, every compensation implies two payments." 1 Strahan, Domat's Civil Law (Cushing's ed. 1861), p. 908 et seq.
Pothier agrees that "The equity of compensation is evident; it is established upon the common interest of the parties between whom it is made; it is clear that each of them has an interest to compensate rather than pay what they owe, * * * compensation avoids a useless circuity * * *" 1 Pothier, A Treatise on the Law of Obligations (Evans' tr. 1853), p. 458. See also Planiol, Trait Imentaire de droit civil (La. State Law Inst. tr.1959), n° 562 p. 314. (Emphasis added).
Relying on this principle, Reggie contends the "Contract for Legal Services" obligated Keene to pay him for legal work over a ten year period an amount nearly equal to the indebtedness he owes Keene in satisfaction of the note. Agreeing, the trial judge found:
The Court adopts the defendant, Edmund Reggie's, position that the retainer therein goes to the interest and the guaranty of sufficient employment to pay the principal is accepted by the Court as payment in full of the loan. All and any legal work done by the defendant, Edmund Reggie, is really, as far as the Court is concerned, it is moot considering theMr. Reggie's interpretation with reference to the contract itself. As reasons for these holdings, the Court adopts Edmund Reggie and Doris Reggie's position, and adopts defendant, Reggie'sEdmund Reggie's interpretation as the correct interpretation of the contract herein involved.
As to Edmund Reggie, the Court finds and rules that Edmund Reggie is legally free from payment herein. Defendant, Edmund Reggie, performed sufficient legal workwell, whatever legal work he performed, even though not going to the balance of the loan, that the guaranty of the work was sufficient to cancel the whole loan.
While compensation may take place even though the debts are not fully liquidated or subject to terms,[1] there must be a mutuality of obligations where each obligor owes the other a debt equally demandable. Ducote v. City of Alexandria, 95-1197, (La.App. 3 Cir. 3/6/96), 670 So.2d 1378. Although Keene denies fully understanding the terms of the "Contract for Legal Service," his principal assertion is simply that Reggie cannot demand satisfaction of the obligation he undertook in this instrument because it is prohibited by the professional rules that regulated Reggie's conduct as an attorney. Thus, Keene urges, Reggie cannot interpose it against paying the loan, as the "Contract for Legal Services" he executed is unenforceable. Keene cites Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567 (La.1986), in support of his argument that Reggie "has done one of two things" wrong: "either: (a) he has collected an excessive fee which should be regulated by this Honorable Court ... or (b) he has entered a prohibited transaction with his client to his own advantage without [following] proper procedure." Whether the litigants could legally transact as they did is the threshold question.
The Louisiana Supreme Court approved the adoption of the Code of Professional Responsibility pursuant to its authority to regulate the practice of law and the rules therein promulgated have the force of substantive law. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). The Code of Professional Responsibility was replaced *726 by the Rules of Professional Conduct, effective January 1, 1987. Article 16, Rule 1.8 now provides:
As a general principle all transactions between client and lawyer should be fair and reasonable to the client. Furthermore, a lawyer may not exploit his representation of a client or information relating to the representation to the client's disadvantage. Examples of violations include, but are not limited to the following:
(a) The lawyer shall not enter into a business transaction where the client unknowingly acquire an ownership, possessory, security or other pecuniary interest adverse to the client unless:
(1) The transaction and terms on which the lawyer acquired the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can reasonably be understood by the client;
(2) The client is given a reasonable opportunity to seek the advise of independent counsel in the transaction;
(3) The client consents in writing thereto.
Prior to Rule 1.8, subsection A and its subpart, the corresponding provisions appeared in Disciplinary Rule DR 5-104(A) as follows:
A lawyer shall not
(1) enter into a business transaction with a client
(2) If they have differing interests therein and
(3) If the client expects the lawyer to exercise his professional judgment therein for the protection of the client.
(4) Unless the client has consented after full disclosure.
We are convinced an attorney-client relationship existed between Keene and Reggie; and, the contracts between them were premised on the existence of that relationship. The contracts are clearly "transactions" covered by the rules regulating the conduct of attorneys. In Bosworth, 481 So.2d at 572, the Supreme Court applying DR 5-104(A) instructed:
When a lawyer enters into a business transaction with his client where they have differing interests and when the client expects the lawyer to exercise his professional judgment in that transaction for the protection of the client, the lawyer should at least advise the client to seek outside counsel. If the advice to seek outside counsel has not been given, or though given, has not been taken, then full disclosure would require the type of advice which a prudent lawyer would be expected to give the client if the client consulted the lawyer regarding such a transaction to a third person.
Keene argues that both the Rules of Professional Responsibility, in effect in 1986 when the parties verbally contracted, and the Code of Professional Conduct, effective on the date the parties actually signed the agreements, controlled the transactions in this case. We find, however, that Reggie met his professional obligations under the principles embodied in both codes.
In response to plaintiff's questions on this issue, Reggie testified, to wit:
Q. Did you advise Mr. Keene at the time that you prepared these documents and presented them for signature, that these documents had certain legal implication?
A. Oh, yes, the documents spell out the legal implications. The documents themselves spell it out very, very clearly, as do the minutes.
Q. Did you explain those ramifications to Mr. Keene?
A. Not only did I, But Mr. KeeneI placed Mr. Keene in contact with my attorney in Washington, D.C., who's a very good friend of Mr. Keene's.
Q. That's your ownyour own personal attorney?
A. Yeah. He has represented me.
Q. Did you advise Mr. Keene that he had a right to seek his own counsel?
A. I really don't know if I did or not. He's free to do it. I mean, he and Mr. Creel could have certainly done it. I mean, I didn't do anything to prevent them fromI mean, it just wasn't in the *727 scheme of things that occurred. I mean, they askedwe were all in accord with what happened.
The trial judge evidently concluded Keene "consented after full disclosure" of any adverse interests Reggie had in the matter or that Keene had been given a reasonable opportunity to seek outside counsel. It is well settled that the appropriate standard of review to be applied by an appellate court is the "manifest errorclearly wrong" standard. The reviewing court must do more than merely review the record for evidence that supports or controverts the trial court's findings; it must review the record in its entirety to determine whether the trial court's findings were clearly wrong or manifestly erroneous. In the absence of error, the trial court's decision must be upheld, even though an appellate court may feel its own evaluations and inferences are as reasonable. Lewis v. State Through Dep't of Transp. and Development, 94-2370 (La.4/21/95); 654 So.2d 311; Kilpatrick v. Alliance Cas. and Reinsuance Co., 95-17 (La.App.3 Cir. 7/5/95); 663 So.2d 62, writ denied, 95-2018(La.11/17/95), 664 So.2d 406; Bruce v. Ampacet Corp., 95-239 (La.App. 3 Cir. 10/4/95), 663 So.2d 323, writ denied, 95-2667 (La.1/5/96); 666 So.2d 288. The record supports affirmance of the trial court's finding that the employment contract was valid. The minutes of the parties' March 13, 1987 meeting were taken to "preserve, as best and practical as possible, the discussions and spirit expressed in the meeting." It was not only Keene's and Creel's intention to "assist Reggie with the loans, they also foresaw employment of him as legal counsel ... [was] going to be worth it for them during the forthcoming decade." These men were savvy enough to record what was said and done at their 1987 meeting so that their intentions would be unambiguous. These minutes, when considered with the fact that Keene was an astute businessman, leave little doubt that he was fully aware of the consequences of his transactions with Reggie. Keene continued to pay Reggie a $22,000 annual retainer fee from 1987-1989, despite allegedly only using his services for a "conflict with Drusilla Seafood," one of Keene's business enterprises. Further, Keene's extensive trading in the "high finance" market specially acquainted him with security devices. He was not an unsuspecting or gullible client who Reggie might have exerted superior and unfair influence over nor could he have been easily misled. We have no doubt that Keene knew and could have demanded other security for the loan he extended to Reggie. Instead, he voluntarily opted to accept Reggie's undertaking to provide him legal services over the a ten year period to extinguish the indebtedness. Any more disclosure or "outside legal advice" in this instance would not have altered his decision to extend the loan to Reggie or cause him to demand greater security from Reggie.
However, we cannot agree with the trial court's holding that Reggie is entitled to "set-off" the entire amount owed on the promissory note against the obligation incurred by Keene in the "Contract for Legal Services." We have consistently held that the appointment of an attorney is a mandate revocable at the client's will. La.Civ.Code art. 3028; Simon v. Metoyer, 383 So.2d 1321 (La.App. 3 Cir. 1980), writ denied, 389 So.2d 1338 (La.1980); Prophit v. McSween, Brook and Bolton, 347 So.2d 11 (La.App. 3 Cir. 1977), writ denied 350 So.2d 902 (La.1977). As a general rule a client has the right to discharge his attorney with or without cause, and upon discharge of the attorney, the contract is at an end. Simon, 383 So.2d 1321; Kramer v. Graham, 272 So.2d 716 (La.App. 3 Cir.1973). When such occurs, the contract provisions on compensation are no longer enforceable; but, the attorney is entitled to compensation for services actually rendered prior to his discharge. Simon, 383 So.2d 1321. Once Keene contacted Reggie in 1990 to end their arrangement, their contract was effectively terminated. Reggie cannot now claim entitlement to any amounts he would have earned had Keene continued to retain him as his attorney. He should, nevertheless, be compensated for those "services actually rendered" up until Keene discharged him.
Our next query, thus, concerns whether Reggie's fees were excessive. At trial, Keene initially did not recall Reggie providing any legal work on all but a few of *728 the matters alleged by Reggie. Reggie cross-examined Keene extensively on transactions ranging from document drafting and review to business acquisitions and financing agreements. Keene, when he could recall with any specificity the referenced transaction, attempted to differentiate between legal work and "business opportunities." Reggie testified at Keene's behest he performed six hundred and seventy hours of legal work, totally $105,961.00 in earned fees and expenses. While insisting that "there was a strong distinction between what is business and what is legal," Keene reluctantly acknowledged, as the trial progressed, that "[i]n every one of those instances, that you've just discussed, I related them as business opportunities to afford you the opportunity to pay me back the money that you owed." As this court surmises from the record, allowing Reggie the chance to remunerate Keene was part of what prompted their "Contract for Legal Services" in the first place. We are satisfied the record supports Reggie's claim for the legal services he performed over a three year period. After his memory was refreshed, Keene did not deny Reggie was involved in various business transactions at his urging during the relevant period. He simply sought to recharacterize the work performed by Reggie.
Rule 1.5 of the Rules of Professional Conduct provides:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
We have considered these guidelines and find Reggie's fees were neither excessive nor unreasonable. His years of experience and special knowledge in the area of commercial transactions and banking justified his hourly rate and the time he claimed was not "out of the ordinary" or otherwise questionable.
Finally, we turn to consider whether the court erred in finding Edmund Reggie's wife, Doris Reggie, rebutted the presumption of community property and was therefore exonerated from any liability on the note signed by her husband.
Louisiana Civil Code article 2361 provides:
Except as provided in Article 2363, all obligations incurred by a spouse during the existence of the community property regime are presumed to be community obligations.
Louisiana Civil Code article 2363 provides:
A separate obligation of a spouse is one incurred by that spouse prior to the establishment or after termination of a community regime, or one incurred during the existence of the community property regime though not for the common interest of the spouses or for the interest of the other spouses.
On March 16, 1987 Edmund Reggie and Keene signed the note evidencing Keene's $311,753 loan to Edmund. The note was presumed a community obligation pursuant to Civil Code article 2361.
However, the presumption that obligations incurred by a spouse during the existence of the community property regime are debts of the community is rebuttable. See Krielow v. Krielow, 622 So.2d 732 (La. App. 3 Cir.1993), writ granted, 93-2539 (La.1/7/94); 631 So.2d 432, reversed on other grounds, 93-2539 (La. 4/11/94; 635 So.2d 180). In order to counter this presumption, a spouse must show that the debt in question *729 was not incurred for the benefit of the community; thus, it is necessary to examine the uses to which the borrowed money was put. See McConathy v. McConathy, 632 So.2d 1200 (La.App. 2 Cir.1994); and Ledet v. Ledet, 496 So.2d 381 (La.App. 4 Cir.1986). Such evidence must be shown by an intermediate standard of proof "more traditionally stated as `clear and convincing'" Salley v. Salley, 647 So.2d 1164 (La.App. 3 Cir.1994).
Doris and Edmund Reggie sufficiently rebutted the community presumption by presenting "clear and convincing" evidence that $300,000 of the money borrowed from Keene was then lent to Edmund's personal friend, John Yemelos. Mrs. Reggie, when asked about how the money borrowed from Keene was used, testified as follows:
We were in Nantucket, and John Yemelos, who my husband was in business with on various enterprises on his own separate business, he was aJohn was the general partner and Edmund was the limited partner. And he called and asked for a loan of three hundred thousand dollars for thirty days, because the partnership neededhe wanted to put it in the partnership ...
This testimony was offered after Mrs. Reggie had established that she and her husband had separate estates and separate business enterprises (the partnership with Yemelos being one of them). The trial judge did not manifestly err in finding the money was not used for the benefit of the Reggies' community estate. The Reggies' and Shirley Istre's testimony sufficiently met the burden of proof required to rebut the presumption, particularly considering the record contains little, if any, contradicting evidence.

DECREE
For the foregoing reasons we reverse the district court's judgment dismissing with prejudice Keene's claims for payment on the note. We instead hold that Keene is entitled to collect $311,753.00, minus $2,500 advanced by Reggie to Keene and the $105,961 owed by him in legal fees to Reggie, plus legal interest from rendition of this opinion. Accordingly, Reggie is directed to pay Keene $203,292.00. We affirm the trial court's ruling dismissing with prejudice all claims by Thomas Keene against Doris B. Reggie. All costs of this appeal and below are assessed to Thomas Keene and Edmund Reggie equally, except that portion relating to Keene's claim against Mrs. Reggie which is cast solely against him.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] See 1984 Revision Comments to La.Civ.Code article 1901 stating:

"Under this Article, when there is an obstacle that prevents compensation by operation of law, such as when one of the debts is not liquidated or is subject to a term, and the parties consent to remove the obstacle, compensation takes place by their agreement. Such compensation is sometimes called `facultative compensation.' See Brock v. Pan American Petroleum Corporation, 186 La. 607, 173 So. 121 (1937); In re Interstate Trust & Banking Co., 194 So. 35 (La.App.Orl.1940)."