694 So.2d 578 (1997)
Deborah Ann WELBORNE, Plaintiff-Appellant,
v.
Sammy Ray WELBORNE, Defendant-Appellee.
No. 29479-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
Rehearing Denied June 12, 1997.
*580 Gary D. Nunn, Jonesboro, for Plaintiff-Appellant.
Charles E. Herring, Jr., Bastrop, for Defendant-Appellee.
Before STEWART, CARAWAY and PEATROSS, JJ.
CARAWAY, Judge.
Deborah Ann Welborne appeals a trial court judgment awarding her child support arrearages and an increase in child support. Ms. Welborne asserts the trial court erred in calculating the arrearages and ordering them placed in trust for the minor's education. Ms. Welborne also asserts the trial court erred in failing to make the child support increase retroactive and in refusing to award her attorney's fees and to hold her former spouse, Sammy Welborne, in contempt.
Mr. Welborne answered the appeal and asserted the trial court erred in modifying the previous joint custody award, awarding arrearages, and requiring Mr. Welborne to pay certain medical bills. On appeal, Mr. Welborne also asserts the trial court erred in refusing to hold Ms. Welborne in contempt.

Facts and Procedural History
Deborah Ann and Sammy Ray Welborne divorced on June 11, 1990. The Welbornes shared joint custody of their two minor daughters, and Mr. Welborne was ordered to pay two hundred dollars in child support for each child and one-half of all medical expenses not covered by insurance.
On September 23, 1991, the trial court increased Mr. Welborne's child support obligation to $500 per month for nine months and $250 for the summer months during which he maintained physical custody of the remaining minor child, Hollie.[1] On August 13, 1992, the trial court found Ms. Welborne in violation of the joint custody agreement and issued the following judgment:
IT IS FURTHER ORDERED that the following sanctions are imposed upon Deborah Ann Welborne, until the Joint Custody Order is complied with:
A. Sammy Welborne is relieved from any child support obligation retroactive to the date of the filing of this Rule for Contempt, until such time as there is compliance with the Joint Custody Plan.
The judgment also ordered Ms. Welborne to pay $500 in attorney fees.
*581 The current litigation began on January 11, 1995 when Ms. Welborne filed a rule to modify custody, increase child support, and for contempt for failure to pay child support. The record shows that Sammy Welborne is an employee of International Paper Company who earns an annual salary, excluding overtime, of approximately $45,000. He works approximately 16 hours a week overtime for which he receives $29.70 an hour. In early 1992, Mr. Welborne voluntarily raised his health insurance deductible from $150 to $1,000. Hollie is a beneficiary of this health insurance plan and the increased premium resulted in greater out of pocket medical expenses for her. Mr. Welborne admits he has not paid any of his child's medical bills since 1992.
Following the August 12, 1992 judgment against Ms. Welborne for violating the custody agreement and her renewed compliance with the custody arrangement, Mr. Welborne resumed paying his court ordered child support from September, 1992 until June, 1994. In March, 1993 and August, 1993, however, Mr. Welborne only paid one-half of the specified child support because Hollie missed a portion of her visitation with him. Mr. Welborne testified that he believed the August, 1992 judgment granted him the authority to withhold child support at any point when he determined Ms. Welborne was not in compliance with the custody order.
In June, 1994, Mr. Welborne and his teenage daughter argued bitterly. His daughter has not returned to his home and he has not paid child support since that date. The record contains testimony regarding several other minor misunderstandings that resulted in confusion and family upheaval demonstrating the inability of Mr. and Ms. Welborne to communicate with each other regarding their minor child. These same incidents reflect Mr. Welborne's apparent inability to relate to his increasingly independent teenage child.
Daniel Pryor, a court appointed licensed professional counselor, interviewed Mr. and Mrs. Welborne and both of their children. Based on his interviews, Mr. Pryor concluded that Mr. Welborne's remarriage in 1991 to an eighteen year old woman and his refusal to provide financial support resulted in an extremely strained relationship with Hollie. Mr. Pryor recommended at least a year of counseling.
Shermie Clark, another licensed professional counselor, interviewed the Welbornes and their daughter and concluded that Mr. Welborne needed counseling in order to build a relationship with his teenage daughter. During her interview with Ms. Clark, Hollie expressed resentment, anger and frustration toward the circumstances that apparently tied Mr. Welborne's obligation to pay child support to her visitation of him. Hollie believed that Mr. Welborne would rather her not visit him in order that he might be allowed to withhold child support payments. When asked to analyze the final argument between father and daughter, Ms. Clark characterized the argument by stating: "Very much like two children fighting instead of father and daughter trying to work out their problems."
Following trial, the district court entered judgment replacing the joint custody with sole custody in favor of Ms. Welborne, increased the child support obligation to $650.33 per month, retroactive to January 1, 1996, and ordered Mr. Welborne to place $6,000 in child support arrearages in trust for his daughter's education. The trial court also ordered Mr. Welborne to pay $2,174.00 to reimburse Ms. Welborne for out of pocket medical expenses incurred as a result of Mr. Welborne raising his insurance deductible from $150 to $1,000 in contravention of a previous judgment. In addition, the trial court ordered Mr. Welborne to pay $158.12 for out of pocket medical expenses incurred prior to the increased deductible. The trial court refused to hold either of the Welbornes in contempt.

Discussion

Child support arrearages
The September, 1991 judgment setting child support at $500 per month was reaffirmed in the August, 1992 judgment. After the August, 1992 judgment, Mr. Welborne substantially complied with his support obligation for twenty-two consecutive months. *582 His assertion that the judgment bestowed upon him the power to unilaterally determine whether Ms. Welborne complied with the custody order and to withhold support if she did not is not supported by any language of the prior judgment[2] and totally contrary to the law. The Louisiana Supreme Court discussed child support awards as follows:
[U]nless automatic reduction, modification or termination is provided for by operation of law, the award remains enforceable notwithstanding that a cause for reduction may have occurred which would, upon proper suit, warrant such a reduction. Support for this rule is found in a proper regard for the integrity of judgments. Such a regard does not condone a practice which would allow those cast in judgment to invoke self-help and unilaterally relieve themselves of the obligation to comply. Any other rule of law would greatly impair the sanctity of judgments and the orderly processes of law. To condone such a practice would deprive the party, in whose favor the judgment has been rendered, of an opportunity to present countervailing evidence, and at the same time deny the judge an opportunity to review the award in light of the alleged mitigating cause which had developed since its rendition. Halcomb v. Halcomb, 352 So.2d 1013 (La.1977). (Emphasis added.).
In short, Mr. Welborne was seriously mistaken in his belief that he could unilaterally decide not to comply with the support order if he determined Ms. Welborne had not complied with the visitation order. See In re PS, 535 So.2d 1052 (La.App. 2d Cir.1988); Borden v. Borden, 550 So.2d 901 (La.App. 2d Cir.1989); McClure v. McClure, 363 So.2d 1334 (La.App. 3d Cir.1978); and Macaluso v. Macaluso, 509 So.2d 201 (La.App. 1st Cir. 1987) [judgment suspending father's support obligation until 14-year-old daughter resumed her court ordered visitation was against public policy].
Once the moving party has proven the existence of child support arrearages, the court has no power to nullify or reduce accumulated alimony until the previous judgment awarding it is amended by a subsequent judgment or by operation of law. Hendrick v. Hendrick, 470 So.2d 449 (La.App. 1st Cir. 1985). Accordingly, Mr. Welborne is liable for the full amount of past due support and the trial court erred in only awarding Ms. Welborne a percentage of the full amount due. Mr. Welborne owes the obligation to pay Ms. Welborne $2,500 for past due child support from August, 1994 through December, 1994. Mr. Welborne is also obligated to pay an additional $250 for the month of March, 1993 and $66.40 for July, 1994, the months in which he only partially paid his obligation.
Arrearages in an award of child support to a mother belong to and are collectible by the mother. The child has already had the support, which the mother somehow provided whether by borrowing or by expending her own capital, and it is to the mother to whom the father's contributions to the support are due. Lamothe v. Lamothe, 350 So.2d 1238 (La.App. 4th Cir.1977). In Rester v. Manuel, 619 So.2d 655 (La.App. 5th Cir. 1993), the court of appeal reversed a trial court judgment requiring the child support arrearages be placed in trust for the children. The court noted that La.C.C.P. art. 3946 governs the award of child support arrearages and gives the "party entitled thereto" the right to make the amount executory. The party entitled to the award is the former spouse and custodian of the child, Ms. Welborne, and the trial court erred by ordering the arrearages be placed in trust for Hollie's future education.
Finally, the record contains no evidence which supports the trial court's denial of attorney's fees to Ms. Welborne for her action for the arrearage. La.R.S. 9:375 provides that when a court renders judgment making past due child support executory "it shall, except for good cause shown, award attorney's fees and costs to the prevailing party." Mr. Welborne asserts his good faith belief that he did not have to pay child *583 support was based on the language of the former judgment. We disagree. As set forth above, the language of the September, 1991 judgment was not unclear particularly in view of the law as discussed above which prohibits the self-help practice employed by Mr. Welborne. Cf. Kibodeaux v. Kibodeaux, 93-1143 (La.App. 3d Cir. 4/6/94), 635 So.2d 530. Accordingly, we hereby order Mr. Sammy Welborne to pay $4,000 in attorney's fees to Deborah Ann Welborne.

Custody
On appeal, Mr. Welborne asserts the trial court erred in modifying the prior joint custody award and awarding Ms. Welborne sole custody of their minor daughter. Specifically, Mr. Welborne asserts the trial court failed to apply the standard enunciated in Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986). In written reasons for judgment the trial court stated:
"Regardless of whether or not Mrs. Parker [formerly Ms. Welborne] has overcome the burden of proof required by Bergeron is immaterial at this point. Something else must be done. The present situation is not in the best interest of the minor...."
Initially we note that an appeal lies from the judgment itself, not the reasons for judgment. La.C.C.P. art. 2083. When the record reveals a reasonable factual basis for the findings of the trier of fact, and those findings are not manifestly erroneous, an appellate court should affirm the judgment made in the lower court. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Free v. Franklin Guest Home, Inc., 463 So.2d 865 (La.App. 2d Cir.1985).
The record in this case provides a substantial factual basis for the judgment awarding sole custody to Ms. Welborne. Both the Welbornes candidly admitted they were unable to communicate with one another thereby making it virtually impossible for them to share custody. Moreover, Mr. Welborne admitted that he no longer had a relationship with his daughter. Christmas and birthday presents purchased by Mr. Welborne for the child had gone undelivered for a period of two years. Mr. Welborne made virtually no attempts to communicate with his daughter either in person, by phone or through the mail. Finally, both licensed family therapists concluded that the current custody arrangement was unworkable and damaging to all the parties involved. Although the trial court indicated in written reasons for judgment that he was not specifically applying Bergeron, the record on appeal reveals that "the continuation of the present custody is so deleterious to the child as to justify a modification...". Bergeron, supra at p. 1200. Accordingly we affirm the trial court's award of sole custody to Ms. Welborne.

Medical expenses not covered by insurance
Mr. Welborne asserts the trial court erred in ordering him to pay one-half of all prior and future medical expenses not covered by medical insurance. As to future medical expenses not covered by insurance, this court has repeatedly held that the express legislative approval of the addition of extraordinary medical expenses to the basic child support obligation under La.R.S. 9:315.5 does not preclude the trial court from ordering one or both parties to pay ordinary, noncovered, medical expenses. See Hutto v. Kneipp, 627 So.2d 802 (La.App. 2d Cir.1993); Settle v. Settle, 25,643 (La.App. 2d Cir. 3/30/94), 635 So.2d 456; Holdsworth v. Holdsworth, 621 So.2d 71, (La.App. 2d Cir. 1993). We likewise affirm the trial court's ruling as to future medical expenses in the present case.
The judgment also required Mr. Welborne to pay $158.12 of the prior uninsured medical expenses. Ms. Welborne asserts the original divorce judgment of 1991 requiring Mr. Welborne to pay one-half of the expenses remains viable. Mr. Welborne asserts the intervening judgments regarding child support were silent as to his obligation to pay one-half of the noncovered medical bills, and therefore he was under no obligation to pay the prior noncovered medical bills. From our review of the law, we have not uncovered, nor does Ms. Welborne's counsel cite, any authority that would allow this court to require Mr. Welborne to pay the noncovered expenses absent court order. Accordingly, we reverse the portion of the *584 judgment requiring payment of one-half of all prior noncovered medical expenses.

Medical expenses related to increased deductible
In September of 1991, Mr. Welborne was ordered to "maintain the existing employer provided medical and health insurance" for the benefit of his daughter. At this time Mr. Welborne's deductible was $150. During the first few months of 1992, Mr. Welborne voluntarily increased his deductible to $1,000. This increased deductible obviously resulted in an increase in the noncovered medical expenses of his minor daughter. Evidence at trial revealed that Ms. Welborne paid for substantially all of the increased noncovered medical payments resulting from the increased deductible. We reject Mr. Welborne's assertion that he was free to raise his deductible because the 1991 judgment did not specifically mention the amount of the deductible. The phrase "maintain the existing employer provided medical and health insurance" clearly precludes such an extreme, arbitrary and capricious modification of coverage.[3] We also reject Mr. Welborne's assertion that the August, 1992 judgment which also required him to "maintain" his daughter on his medical and hospitalization insurance somehow absolved him of liability because at that time the deductible was $1,000. Prior to the August, 1992 judgment, the majority of the medical expenses at issue had not arisen. Moreover, testimony indicated that Ms. Welborne was not informed of the increase of the deductible by Mr. Welborne or his employer. Mr. Welborne produced no evidence to support his assertion that Ms. Welborne or the trial court, at the time of the August, 1992 judgment, somehow implicitly condoned and accepted the drastic increase in the deductible. Accordingly, we affirm the award of $2,174 to Ms. Welborne for expenses incurred due to the increased insurance deductible.

Retroactivity
Except for good cause shown, a judgment modifying a child support judgment shall be retroactive to the date of judicial demand. La.R.S. 9:315.21; Farris v. Farris, 95-1475 (La.App. 3d Cir. 5/1/96), 673 So.2d 1276. The burden is not on the claimant spouse, Ms. Welborne, to demonstrate such "good cause," but rather the burden is on Mr. Welborne, the defendant in rule, to show good cause for not making the award retroactive to the date of judicial demand. Broussard v. Broussard, 532 So.2d 281 (La. App. 3d Cir.1988).
Support is based on the wants of the person requiring it and the circumstances of those who are to pay it. La.C.C. art. 231; Hogan v. Hogan, 549 So.2d 267 (La.1989). Therefore, to prevail under La.R.S. art. 9:315.21 and demonstrate "good cause" for not making a child support award retroactive, Mr. Welborne is required to show that Hollie was not in need of the increased support or that he was unable to pay the increased amount from the date of judicial demand. Financial records introduced at trial revealed that Mr. Welborne's salary had increased prior to suit being filed in January, 1995. The court's calculation of the increase in the support obligation to $650.33 per month was based upon that pre-1995 salary level. We disagree with Mr. Welborne that the joint continuances and other procedural delays which prevented the trial of the rule until 1996 amount to good cause in the face of the clear circumstances for the increase which existed on the date of the filing. Accordingly, the increase in child support is hereby made retroactive to January, 1995.

Contempt
On appeal, each of the Welbornes assert the trial court erred in not holding the other former spouse in contempt. The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying the Court's order and its decision will only be reversed when *585 the appellate court can discern an abuse of that discretion. Martin v. Martin, 457 So.2d 189 (La.App. 2d Cir.1984). We reiterate that a proceeding for contempt in refusing to obey the court's orders is not designed for the benefit of the litigant, though infliction of a punishment may inure to the benefit of the mover in the rule. The object of the proceeding is to vindicate the dignity of the court. Robertson v. Robertson, 258 So.2d 125 (La.App. 2d Cir.1972). The district court did not feel its dignity had been impeached by either of the Welbornes, and we affirm its ruling.

Conclusion
For the reasons set forth above the judgment of the trial court insofar as it grants sole custody to Ms. Welborne and declines to hold either party in contempt is affirmed. The judgment awarding child support arrearages is modified to award Ms. Welborne arrearages from August to December, 1994 equaling $2,500 plus an additional $316.40 for partial payments in March, 1993 and July, 1994. The portions of the judgment requiring the arrearages to be placed in trust, refusing to make the child support increase retroactive to the date of judicial demand and refusing to grant attorney's fees to Ms. Welborne are reversed. Ms. Welborne is entitled to collect the full amount of the arrearages through December, 1994, the judgment increasing support to $650.33 is made retroactive to January 1, 1995 and Ms. Welborne is awarded $4,000 in attorney's fees. Costs of this appeal are assessed to Mr. Welborne.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and STEWART, GASKINS, CARAWAY and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] At the time of this judgment, the oldest daughter was approximately two months from the age of majority. The judgment provided for additional child support for this two month period; however, the Welborne's adult daughter, Jennifer, is not involved in the current litigation.
[2] We need not address the propriety of the condition placed upon the resumption of Mr. Welborne's support obligation in the August, 1992 judgment. Nevertheless, the conditional order only allowed Mr. Welborne to withhold support payments "until" the joint custody resumed.
[3] The arbitrary and capricious nature of Mr. Welborne's choice to raise his deductible to $1,000 is evidenced by the fact that his insurance premium plan would have decreased significantly even if he had maintained his existing deductible of $150 due to his employer's choice to change insurance plans.