920 So.2d 326 (2006)
Annette R. NESBITT, Plaintiff-Appellant
v.
B. Woodrow NESBITT, Jr., Defendant-Appellant.
No. 40,442-CA.
Court of Appeal of Louisiana, Second Circuit.
January 13, 2006.
Rehearing Denied March 2, 2006.
*328 Donald L. Kneipp, Monroe, for Plaintiff-Appellant.
Susan D. Scott, Shreveport, for Defendant-Appellant.
Before GASKINS, CARAWAY and PEATROSS, JJ.
GASKINS, J.
Both former spouses appeal a trial court judgment which classified certain items in their community property partition. Annette Nesbitt Pittman ("the wife") appeals from portions of the judgment pertaining to her former husband's judicial campaign debt and the settlement proceeds of a lawsuit arising from personal injuries suffered by the former husband in a 1988 bicycle accident. B. Woodrow Nesbitt, Jr. ("the husband"), also appeals from portions of the judgment concerning the settlement proceeds, as well as the trial court's finding of contempt against him.

FACTS
The parties married in 1968. They separated in December 2001 and were divorced in June 2002. The parties entered into a consent judgment which was signed in August 2002 and included provisions ordering the parties not to "dissipate" any community assets. The judgment allowed the husband to make payments of tax liability from their accounts, but required him to notify the wife of the payment and provide her with a copy of the check. In 2004, each former spouse filed a rule seeking to have the other held in contempt for violating provisions of the August 2002 judgment.
By a judgment signed in November 2004, the parties entered into a voluntary partial partition of their community property. However, the judgment provided that the parties would litigate the husband's reimbursement claim for the settlement proceeds from his bicycle accident, the classification of the husband's campaign debt, and the contempt rules.
Following a hearing in late November and early December 2004, the trial court held each spouse in contempt for violating various provisions of the August 2002 judgment; however, neither was sentenced *329 nor fined. While the wife does not appeal the contempt finding against her, the husband appeals the contempt finding against him.[1] It involved him selling two community vehicles and depositing the money into his personal account; additionally, he failed to give the wife copies of checks for tax payments as directed in the judgment.
As to the classification of property and obligations, the trial court found that the husband's campaign debt was a community obligation. Concerned with the inequities of such a finding, the court ordered that all proceeds from fund-raisers on behalf of the husband be applied equally to the community debt as between the spouses. As to the classification of the personal injury settlement proceeds, the trial court divided it into three categories: the wife's loss of consortium, or $50,000; the husband's lost wages or future lost wages, or $225,000 (minus the sum of $56,000 received in disability payments); and general damages for personal injury suffered by the husband, or $306,000. Judgment was signed January 13, 2005. It further provided that, due to the allocations made, the wife owed the husband reimbursement of $127,146.27.

CONTEMPT
The husband contests the finding of contempt against him. The trial court found that the husband knew or should have known that the judgment (which stated that the parties were "reciprocally prohibited from dissipating any community assets") was intended to prevent him from getting rid of any community property. The husband admits selling two community vehicles; however, he contends that he did not "dissipate" community assets because he acted prudently to sell them before their values declined and he maintained the sales proceeds for the benefit of the community. He asserts that he would not have sold the vehicles if he thought he was prohibited from doing so. The husband also argues that although he did not give the wife copies of the checks for tax payments, she had access to the statements of the accounts upon which the checks were drawn. Consequently, he reasonably believed that she already had copies of the checks.
The wife argues that the husband was properly held in contempt by the trial court for violating the terms of a judgment which prohibited him from "dissipating" community assets. Furthermore, the prior consent judgment clearly required that the wife be sent copies of the checks and the husband failed to do so.
A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying the court's orders and its decision will only be reversed when the appellate court discerns an abuse of that discretion. Welborne v. Welborne, 29,479 (La.App.2d Cir.5/7/97), 694 So.2d 578, writs denied, 97-1800, 10/13/97, 703 So.2d 621, 97-1850, 10/13/97, 703 So.2d 623. A proceeding for contempt in refusing to obey the court's orders is not designed for the benefit of the litigant, though infliction of a punishment may inure to the benefit of the mover in the rule. The object of the proceeding is to vindicate the dignity of the court. Welborne, supra; Mizell v. Mizell, *330 37,004 (La.App.2d Cir.3/7/03), 839 So.2d 1222; Martin v. Martin, 37,958 (La. App.2d Cir.12/10/03), 862 So.2d 1081, writ not considered, XXXX-XXXX (La.3/12/04), 869 So.2d 807.
The current law on contempt of court is an oddity in that the sentence dictates the nature of the proceeding, civil or criminal. In its order adjudging a person in contempt, the trial court is to specify the punishment imposed. La. C.C.P. art. 225(B). An adjudication of contempt without the imposition of sanctions is meaningless. Lemoine v. Lemoine, 303 So.2d 520 (La.App. 1st Cir.1974).
Because there were no sanctions imposed, this matter is not ripe for review. Under the present posture, the judge has only made a finding of fact. Therefore, we are unable to examine this ruling for error. We are cognizant that the trial judge intentionally did not impose sanctions. We remand this matter for further proceedings. The trial judge is instructed to either leave this finding of fact as a warning or to complete the adjudication of contempt.

CAMPAIGN DEBT
The wife argues that the trial court erred in classifying the husband's campaign debt as a community obligation. She contends that the court was factually mistaken when it said that she agreed to pay up to $100,000 of the husband's campaign debt. (The wife testified that the husband told her that he would spend $100,000 at most on the campaign.) She also maintains that there was no evidence that the husband made the decision to run for public office to benefit her or the community. To the contrary, she testified that he did not even inform her of his decision until after he entered the race. The wife also asserted that at the time of the campaign, the husband was already planning to leave the marriage. Thus, she argues that the campaign debt only benefitted the husband, not her or their community, and that it should be classified as the husband's separate obligation.
The husband contends that the campaign debt was incurred during the marriage and that the wife reaped benefits from his successful campaign. Among these benefits were the income from the position, retirement contributions, and health insurance coverage.

Law
La. C.C. art. 2360 defines a community obligation as an "obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse." Except as provided in La. C.C. art. 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations. La. C.C. art. 2361. According to La. C.C. art. 2363, a separate obligation of a spouse includes "one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse." Once it is shown that a debt arose during the existence of the community, the presumption set forth in Article 2361 may be rebutted only by facts proving the indebtedness to be a separate obligation as defined in Article 2363. Anding v. Anding, 32,084 (La.App.2d Cir.8/18/99), 740 So.2d 253.
To determine whether these funds benefitted the community, or were used for the "common interest of the spouses," it is necessary to examine the uses to which they were put. McConathy v. McConathy, 25,542 (La.App.2d Cir.2/23/94), 632 So.2d 1200, writ denied, 94-0750 (La.5/6/94), 637 So.2d 1052; Keene v. Reggie, 96-740 (La. App. 3d Cir.10/22/97), 701 So.2d 720; Sequeira *331 v. Sequeira, 04-433 (La.App. 5th Cir.11/30/04), 888 So.2d 1097, writ denied, XXXX-XXXX (La.4/29/05), 901 So.2d 1065.

Discussion
The campaign debt was incurred during the marriage. The record indicates that a line of credit secured by a prior mortgage on the family home was utilized. It is not disputed that both spouses signed the necessary financial documents. The wife testified that her "very controlling" husband "made" her sign the mortgage documents; however, we do not believe that the record supports a finding of duress.
Although she testified that she was opposed to the husband running for public office, the wife actively and fully participated in the campaign. Following the successful completion of the campaign, the wife benefitted financially from the husband's new position. While the husband's earnings from his law practice had fluctuated from year to year, he received a regular and certain salary as an elected official. His paycheck was deposited into the community bank account; the wife had use of these funds. They were expended on community debts, including the family home and the spouses' automobiles. The wife also received medical insurance benefits through his position.
The wife testified that at the time of the campaign the marriage was "not good." However, the husband did not leave her as soon as he was elected. The spouses did not separate until more than a year and a half after the campaign.
We note that the husband took a substantial reduction in salary when he assumed his full-time elected position. In determining whether the campaign was a community or separate debt, we believe that it is appropriate to consider such factors as the salary reduction and the campaign debt/salary disparity. In this case, the wife benefitted from the salary for a year and a half and she clearly expected the salary to be considered community funds. This is a case-by-case factual determination, and as such, we cannot say the trial judge erred in his finding that the wife failed to carry her burden that the campaign debt was the husband's separate debt.
We do, however, reverse the trial judge's allocation of the campaign debts owed by the husband's campaign organization to the parties, finding that he improperly categorized these debts of the campaign organization as debts of the community property regime. The campaign organization is a separate entity and does not share the identity of the community property regime. Testimony indicated that the campaign organization owes bank loans, as well as a debt to the parties. We do not have the campaign organization's records before us and are thus unable to determine if these bank loans represent a debt to the community or solely to the bank. The campaign organization also had a debt that it owed to the parties, approximately $88,000, apparently for money the parties loaned to it. This debt is an asset, an account receivable of the community. In that only the husband continues to benefit from this loan from the community property and he has control over whether the campaign raises money and which debts it pays, we find that the trial judge should have assigned this account receivable as an asset to the husband.
We affirm the trial court's finding that any debt incurred by the parties during the marriage in support of the campaign is a community debt. We reverse the trial court's determination of certain campaign organization debts. We remand for the trial court to determine if the bank loans *332 are carried by the campaign organization as a debt due to the community, that is, an asset of the community. We also remand for the trial judge to reallocate any debt the campaign organization owes to the parties as an asset of the husband. After this is done, the wife should have a reduction in the amount she owes the husband to equalize the distribution of the community property. As we are unable to make these determinations on the record before us, we remand for further proceedings, in conformity with this opinion.

SETTLEMENT PROCEEDS
The spouses filed suit in May 1989 against the parent and insurers of the minor driver who struck the husband while he was riding his bicycle. In addition to damages for the husband's pain and suffering, the petition alleged that the husband suffered "a significant loss of earnings" as a result of the accident. It also alleged that due to the accident, the wife was entitled to recover damages for "the loss and/or impairment of the services, assistance, and society of her husband." In June 1989, the spouses settled their claims against the defendants for a total of $525,000.
The wife argues that the trial court erred in failing to classify the entire amount of the settlement proceeds as community property. She maintains that the husband donated to the community the portion of the settlement proceeds that was his separate property. She asserts that the evidence showed that the husband instructed that she be included in all of the legal paperwork and settlement documents and that he considered the money to be just as much the wife's property as his. Also, the wife alleged that the money was commingled into the community account. However, should this court find that there was no such donation by the husband, the wife accepts the trial court's reclassification of the settlement proceeds as being as accurate as possible.
The husband contends that the trial court erred in finding that $225,000 of the $525,000 settlement funds were attributable to his lost wages. To the contrary, he claims that the entire settlement  with the exception of a small amount for the wife's loss of consortium  was to compensate him for his painful and extensive personal injuries. As to his lost wages, he argues that his earnings as a personal injury lawyer fluctuated greatly. While he might have lost some cases because he was unavailable due to his injuries, he maintains that he actually gained other clients due to the publicity from his accident. He also asserts that the wife's loss of consortium should be reduced from $50,000 to only $5,000.
A court of appeal may not set aside a trier of fact's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Stobart, supra.

Donation to the Community
The trial court did not accept the wife's argument that all of the settlement proceeds were donated to the community. We find no manifest error in this determination. The record does not support a finding that the husband intended for all of the settlement proceeds to be community property.

Future Lost Wages
La. C.C. Art. 2344 states:

*333 Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.
Since awards for future lost income are inherently speculative and intrinsically insusceptible of being calculated with mathematical certainty, the courts must exercise sound judicial discretion to determine these awards. The awards should be consistent with the record. Robbins v. State ex rel. Dept. of Labor, 31,590 (La.App.2d Cir.2/24/99), 728 So.2d 991.
We reject the husband's assertion that the vast majority of the settlement was to compensate him for his personal injuries and was thus his separate property. It is evident from the record  including the spouses' joint petition for damages  that a portion of the settlement was to compensate both spouses for their community loss of the husband's earnings.
Frank Cook, the husband's CPA, testified that he prepared figures on lost earnings and office expenses in late 1988. Letters indicate that these figures were furnished to the defendant insurers in connection with the husband's injuries. According to Mr. Cook, the average annual gross receipts from the accounting records and income tax returns for the five years ending January 31, 1988, was $234,725. (The trial court noted that while the 1989 tax returns might have been helpful, the parties had been unable to locate them.) We believe that Mr. Cook's calculations provide a reasonable basis for the trial court's determination of $225,000 as the portion of the award attributable to lost wages. Consequently, we find no manifest error in the trial court's allotment for lost wages in the settlement proceeds.

Loss of Consortium
In general, a claim for loss of consortium has seven elements: (1) loss of love and affection; (2) loss of society and companionship; (3) impairment of sexual relations; (4) loss of performance of material services; (5) loss of financial support; (6) loss of aid and assistance; and (7) loss of fidelity. Bassett v. Toys "R" Us Delaware, Inc., 36,434 (La.App.2d Cir.12/30/02), 836 So.2d 465, writ denied, XXXX-XXXX (La.4/25/03), 842 So.2d 408. A loss of consortium award is a fact-specific determination, to be decided case-by-case and is disturbed only if there is a clear showing of an abuse of discretion. Bassett, supra.
The evidence reveals that the severe injuries suffered by the husband as the result of his bicycle accident also took a substantial toll on the wife. She cared for him steadfastly throughout this traumatic and "very stressful" ordeal, both in the hospital and later at home, and through several surgeries. His injuries affected all aspects of their life together. The husband became moodier and much more difficult to live with. Due to the head injuries sustained by the husband  who supported the family  the wife also faced their financial uncertainty. Based on the record before us, we find no manifest error in the trial court's determination that $50,000 of the settlement proceeds be apportioned for the wife's loss of consortium.
*334 We affirm the portion of the trial court judgment addressing the settlement proceeds. We find that the trial judge was not clearly wrong and that the apportionment of the funds was equitable. The funds were not commingled so as to prohibit division. See Ramsey v. Ramsey, 96-481 (La.App. 3d Cir.10/9/96), 682 So.2d 797.

CONCLUSION
We remand the contempt matter to the trial court for further proceedings. We affirm the trial court's finding that any debt incurred by the parties during the marriage in support of the campaign is a community debt. We reverse the trial court's delineation of certain campaign organization debts, and remand for further proceedings. We affirm the trial court's classifications of the settlement proceeds.
Costs are assessed equally between the parties.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
APPLICATION FOR REHEARING
Before GASKINS, CARAWAY, PEATROSS, DREW and MOORE, JJ.
Rehearing denied.
NOTES
[1] The wife was found in contempt for violating a court order not to use a $4,300 attorney fee refund.