733 So.2d 45 (1999)
R. Carter SANDERS, d/b/a Stonebridge Associates, Plaintiff-Appellant,
v.
FEDERAL APARTMENTS LIMITED PARTNERSHIP, et al., Defendants-Appellees.
No. 31,562-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
*46 Ladson, Odom & Des Roches by Stuart E. Des Roches, New Orleans, Counsel for Appellant.
Lance P. Havener, Shreveport, Counsel for Appellees.
Before BROWN, CARAWAY, KOSTELKA, JJ.
KOSTELKA, J.
In this suit on a promissory note, R. Carter Sanders d/b/a Stonebridge Associates, appeals the trial court rejection of his claim for payment. Finding no manifest error, we affirm.

FACTS
In pursuit of federal Section 8 Moderate Rehabilitation funding for a 164-unit apartment project in Fort Lauderdale, Florida, Federal Apartments Limited Partnership ("FALP") entered into a "Retainer Agreement" for the period beginning November 1, 1986 to October 31, 1987, with R. Carter Sanders d/b/a Stonebridge Associates,[1] ("Sanders") for research *47 of regulations and matters relating to the U.S. Department of Housing and Urban Development; advice to FALP regarding legislation, budget decisions, and other policies affecting the financing of rental housing; and, assistance in the acquisition, financing, and rehabilitation of rental housing.[2] The agreement provided for a monthly compensation rate of $500, separate billing of expenses and a fixed fee in the amount of $164,000,[3] payable at the earlier of permanent or construction loan funding, and contingent upon successful efforts by Sanders in obtaining "substantial benefits" to FALP.
Sanders visited with HUD Secretary, Thomas T. Demery, on two separate occasions in December 1986 and once in January 1987 to discuss the project. In January 1987, HUD approved 164 units of low-income housing to the Fort Lauderdale Housing Authority. One year later, in January 1988, FALP was selected by the Fort Lauderdale Housing Authority as the renovator/builder of the project. Although the parties signed an agreement on July 22, 1988 reflecting that choice, a dispute over the price of the project, relating to base rent calculations, had occurred between January and July 1988.[4]
Because the rent dispute created cost overruns, FALP and Sanders renegotiated their original agreement on August 2, 1988 to reflect a reduction in the fee amount from $164,000 to $100,000, with a $4,000 credit for fees previously paid. The amendment provided for the execution of a non-interest bearing note to secure payment of the funds, due upon FALP's receipt of the final installment of HUD funds. Execution of the note occurred on October 20, 1988, and the final installment of HUD funds to FALP occurred sometime in late 1989.
When FALP refused to honor the note based upon Sanders's failure to perform, Sanders instituted this action. The trial court rejected Sanders's claims, however, finding that the relationship between Sanders and FALP was that of attorney-client, that the contingency upon which the contract depended, Sanders's securing of "substantial benefits" to FALP, did not occur, and therefore, the promissory note lacked consideration. The court found the $4,000 paid to Sanders to be adequate compensation, and that any attempt by Sanders to influence HUD officials vitiated the parties' consent. This appeal ensued.

DISCUSSION

Attorney-Client Relationship
In support of his appeal, Sanders urges error in the trial court determination regarding enforcement of the note and the existence of an attorney-client relationship. We first address the attorney-client relationship.
The appointment of an attorney is a mandate revocable at the client's will. Keene v. Reggie, 96-740 (La.App. 3d Cir.10/22/97), 701 So.2d 720; Simon v. Metoyer, 383 So.2d 1321 (La.App. 3d Cir. 1980), writ denied, 389 So.2d 1338 (La. 1980). The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists. Louisiana State Bar Association v. Bosworth, 481 So.2d 567 (La.1986); Barnett v. Sethi, 608 So.2d 1011 (La.App. 4th Cir.1992), writs denied, 613 So.2d 993, 994 (La. 1993).
When an attorney is discharged before entirely earning his fee, he cannot rely on commercial laws to collect on a promissory note given in connection with *48 the legal services. Under these circumstances, he is entitled to remuneration for services actually rendered. Simon v. Metoyer, supra.
In this case, the evidence adequately supports the lower court determination that an attorney-client relationship existed. Both Frank Taylor and Stanton Dossett, partners in FALP, testified that they thought Sanders was hired to represent them as an attorney. Correspondence from Dossett to Sanders regarding the payment of fees supports the partners' statements. Moreover, substantial documentation written by or on behalf of Sanders also indicates the existence of an attorney-client association. A February 7, 1989 letter from Sanders to Dossett requests that Dossett choose whether or not to waive the attorney-client privilege. A February 8, 1989 letter by Sanders, on Sanders & Associates letterhead, responding to a request to examine FALP's financial statements, explains Sanders's status as "special counsel only in certain designated regulatory and corporate-related areas." Regarding collection of the subject fee by Sanders is correspondence dated February 1, 1989 from his law office indicating that "an audit of the firm[']s books," showed an outstanding balance. Two other invoices, printed on Sanders & Associates letterhead, and dated February 1, 1989, and October 20, 1988, make no reference to Stonebridge Associates and request that payment be made to R. Carter Sanders, Jr., P.C. Sanders admitted that the tax identification number included below his name on those invoices was that of his law firm, although he possessed a separate number for Stonebridge Associates. Upon manifest error review, this record presents ample support for the factfinder's conclusions regarding the existence of an attorney-client relationship. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993).

Enforcement of the Note
Nor do we find error in the court's rejection of Sanders's payment under the note. Frank Taylor testified that he had discussions with Sanders regarding the rent calculations prior to July 22, 1988, the date of the FALP contract with the Fort Lauderdale Housing Authority. Although Sanders assured Taylor that he would "fix it," Taylor never heard from Sanders again. Dossett testified that he felt the rent dispute was part of Sanders's obligation. Even Sanders admitted that he "may have been" asked to work on the rent calculations and had made a phone call to investigate the problem.
This evidence supports the trial court determination that Sanders orally agreed to extend the terms of the original agreement to include the rent dispute.[5] And, under the original contract terms, the underlying consideration given for the payment of any amounts were Sanders's "efforts," defined in the agreement as research, advice, and assistance. The $164,000 fee remained contingent upon these "efforts" resulting in "substantial benefits" to FALP. Therefore, upon Sanders's consent to "fix" the rent calculations, he extended those terms to the rent dispute. Likewise, the terms of the August 2, 1988 amendment provided for payment of the fee "in consideration of" Sanders's research, advice, and assistance. Accordingly, despite Sanders's contention that the sole condition of payment was the final payment of HUD funds to FALP, the clear wording of both the contract and the amendment shows that the underlying consideration given for any payment was Sanders's efforts. Therefore, Sanders's admitted failure to assist FALP in resolving the dispute breached the retainer agreement and its amendment for failure *49 of consideration thereby forfeiting his right to the fee.[6]
Moreover, we note also that despite Sanders's claims that FALP made a profit on the venture, there is evidence in the record which supports the trial court's determination that the partnership experienced a financial loss due to the disparity in the rent calculation which resulted in the unfulfilled "substantial benefits" contingency.

Sanders's Compensation
Although an attorney may not collect on a promissory note given in connection with legal services where he is discharged before he has entirely earned his fee, he is entitled to remuneration for services actually performed. Simon, supra. Even though FALP never formally discharged Sanders, it is clear that FALP considered the attorney-client relationship dissolved when it secured the services of another individual to argue the rent dispute before HUD. Taylor testified that he thought Sanders "was history" as of July 22, 1988 due to Sanders's failure to return his calls. Eventually, Dossett offered to pay Sanders a "fair remuneration" for services rendered, although Sanders refused to provide an itemized account of services performed.
Under these circumstances, Sanders is legally entitled to recover in quantum meruit. Nevertheless, based upon his persistence in requesting only full payment of the note, his admission that he never kept detailed billing records or time sheets, and the lack of such proof in the record before us, he has failed in his burden of showing the value of the services and expenses beyond the $4,000 previously paid. Johnson v. Insurance Co. of North America, 27,847 (La.App. 2d Cir. 01/24/96), 666 So.2d 1286. We affirm the trial court award of $4,000 as compensation for services rendered.
The judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] At trial, Sanders, a licensed attorney, described Stonebridge Associates as a fictitious business name. The company engaged in consulting services which assisted clients in obtaining discretionary HUD funding for housing projects. Sanders had served as Deputy Assistant Secretary to HUD from 1981-1983, with responsibilities including Section 8 funding distributions. He thereafter engaged in "private practice" in the area of housing, administrative law and real estate finance, although Sanders testified that he had never practiced law under the name Stonebridge Associates.
[2] Section 8 "Mod Rehab" provides federal funds for both the rehabilitation of dilapidated property for low-income housing and rent subsidies.
[3] Calculated at $1,000 per unit charge.
[4] HUD rent calculations were eventually affirmed in separate litigation.
[5] Moreover, even under the very general terms of the original contract, it is not unreasonable to conclude that the parties originally contemplated assistance with problems such as the rent dispute.
[6] Regarding Sanders's claims of performance even under the original contract, he has offered no proof, other than his self-serving opinion, that his visits to HUD Secretary Demery secured the job for FALP. Without independent substantiation, this evidence is insufficient to show that Sanders's efforts secured the award for FALP and thereby fulfilled the "substantial benefits" contingency. Moreover, as the trial court noted, any attempt by Sanders to influence HUD officials improperly would vitiate the consent of the parties. LSA-C.C. art. 2030.