859 So.2d 666 (2003)
In re Johnnie A. JONES, Jr.
No. 2002-B-3131.
Supreme Court of Louisiana.
October 21, 2003.
*667 Charles B. Plattsmier, G. Fred Ours, Baton Rouge, Counsel for Applicant.
Johnnie A. Jones, Jr., Lon E. Roberson, Baton Rouge, Counsel for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from one count of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Johnnie A. Jones, Jr., an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
Carolyn Williams retained respondent to represent her in connection with a claim for damages resulting from a 1996 automobile accident. Respondent filed suit on behalf of Ms. Williams and her minor children against the driver of the other vehicle and his insurer, State Farm Mutual Automobile Insurance Company ("State Farm"). The parties conducted discovery for a period of several months after the suit was filed. In November and December 1998, respondent began to engage in settlement discussions with State Farm's in-house counsel, Sonceree Smith Clark.
According to respondent, his client instructed him to settle the case "for whatever [he] could get." Respondent represents that in December 1998, he advised Ms. Clark that he was authorized by his client to settle the case for $9,000. However, it is undisputed that at this point in time, Ms. Clark was not authorized to make a formal offer of settlement on behalf of State Farm.
On Friday, January 22, 1999, respondent received correspondence from Ms. Williams discharging him as her attorney. On the morning of the following Monday, January 25, 1999, respondent telephoned Ms. Clark to discuss the Williams case. It is respondent's contention that he told Ms.
*668 Clark during this conversation that he had been discharged by his client; however, Ms. Clark denies that respondent mentioned this fact, and she testified that respondent called her to ask if she had received any authority to settle the Williams case. Ms. Clark then telephoned John Ozier, the State Farm claims superintendent overseeing Ms. Williams' case, who in turn authorized Ms. Clark to settle the case for the sum of $9,000. Ms. Clark telephoned respondent and extended the settlement offer to him. The ODC alleges that respondent again failed to advise Ms. Clark that he had been discharged by his client, and that he accepted State Farm's settlement offer without the knowledge or consent of his client, Ms. Williams.
On the afternoon of Monday, January 25, 1999, Ms. Clark hand delivered Ms. Williams' settlement check to respondent's office. By letter dated the same day and apparently faxed to Ms. Clark's office sometime after the check was delivered, respondent advised Ms. Clark that he had been discharged by his client and that she had refused to accept the $9,000 check.
Thereafter, State Farm filed a motion to enforce the settlement. At the hearing on the motion, respondent testified that the $9,000 settlement offer was made by State Farm in November or December 1998, and that he accepted the offer at that time.[1] State Farm subsequently withdrew its motion upon learning that Ms. Williams had discharged respondent three days prior to the settlement, not after the settlement, as Ms. Clark had been led to believe.

DISCIPLINARY PROCEEDINGS
Ms. Williams filed a complaint against respondent with the ODC. After an investigation, the ODC filed one count of formal charges against respondent, primarily alleging he violated Rule 1.16(a)(3) of the Louisiana Rules of Professional Conduct by failing to withdraw from the representation of a client upon being discharged.
Respondent answered the formal charges and denied any misconduct. The matter then proceeded to a formal hearing on the merits.
Hearing Committee Recommendation
Considering the evidence presented at the hearing, the hearing committee made the following factual findings:
1. Ms. Williams retained respondent's services to pursue a personal injury action.
2. Respondent filed suit on Ms. Williams' behalf and engaged in discovery.
3. Respondent had several telephone conversations with Ms. Williams during the course of the litigation.
4. Until discharge, respondent was endowed with full discretion from Ms. Williams to settle her claim for as much as possible.
5. Until discharge, respondent was engaged in active settlement negotiations with representatives of State Farm.
6. Upon some date in December 1998, respondent advised State Farm's inhouse counsel, Ms. Clark, that he was authorized to settle Ms. Williams' case for $9,000.
7. Respondent was discharged by Ms. Williams on January 22,1999.
8. Until January 25, 1999, Ms. Clark did not have authority to make or *669 accept a specific offer of settlement in the case, but she did have authority to discuss settlement amounts with the respondent.
9. On January 25, 1999, Ms. Clark received authority from her superior to offer $9,000 to settle Ms. Williams' claim, and she relayed that offer to respondent's office.
10. On January 25, 1999, respondent communicated with Ms. Clark that he had been discharged.
Based on these factual determinations, the hearing committee concluded that respondent did not violate the Rules of Professional Conduct as charged in the formal charges. In particular, the committee determined that nothing in the record suggests respondent assumed authority as counsel for Ms. Williams after he was discharged on January 22, 1999 or that he accepted a settlement on behalf of Ms. Williams after he was discharged. The committee also found Ms. Clark's testimony did not establish that respondent actually attempted to settle the Williams case without informing Ms. Clark that he had been discharged. Based on this reasoning, the committee recommended the formal charges against respondent be dismissed.
The ODC filed an objection to the hearing committee's report and recommendation.

Disciplinary Board Recommendation
A majority of the disciplinary board found that the hearing committee's factual findings are supported by the record, and agreed that the committee correctly applied the Rules of Professional Conduct. Accordingly, the board recommended the formal charges against respondent be dismissed. Two members of the board dissented.
The ODC sought review of the board's ruling in this court. On January 2, 2003, the court ordered the parties to submit briefs addressing the issue of whether the record supports the disciplinary board's report. After reviewing the briefs filed by both parties, the court ordered the matter docketed for oral argument.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992).
The critical issue in this case is whether the settlement was confected before or after respondent was discharged by his client on January 22, 1999. Respondent asserts that the settlement took place in December 1998, prior to his discharge, when he communicated to Ms. Clark that his client had authorized him to settle the matter for $9,000. By contrast, the ODC maintains the settlement did not occur until January 25, 1999, after respondent's discharge, when Ms. Clark received authority from her superior to offer $9,000 to settle the claim, and she relayed that offer to respondent's office.
The hearing committee made a finding of fact that prior to January 25, 1999, Ms. Clark did not have authority to make or accept a specific offer of settlement in the case. This factual finding is supported by the undisputed testimony in the record from Ms. Clark as well as respondent. Accepting this factual finding, we conclude the settlement could not have been confected prior to January 25, 1999. Therefore, at the time respondent purported *670 to accept the settlement on behalf of his client, he had already been discharged.
It is well settled that a client has an absolute right to discharge his or her lawyer at any time. Saucier v. Hayes, 373 So.2d 102 (La.1978) (on rehearing). Rule 1.16(a)(3) requires the lawyer to withdraw from further representation of the client upon being discharged. As we explained in Scott v. Kemper Insurance Co., 377 So.2d 66, 70 (La.1979), an attorney may not "force his continued representation [on] a client who wishes to discharge him...." Respondent breached this fundamental tenet when he accepted State Farm's settlement offer on behalf of his client after he was discharged.
Having found professional misconduct, we conclude the hearing committee and disciplinary board erred in dismissing the charges against respondent. We now turn to a discussion of the appropriate sanction for respondent's misconduct.
The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
As previously noted, respondent's misconduct goes to the heart of the attorney-client relationship. "The relation of attorney and client is one of special confidence and trust and the dignity and integrity of the legal professional demand that the interests of the client be fully protected." Saucier, 373 So.2d at 111 (Dennis, J., dissenting). By failing to respect his client's absolute right to discharge him, respondent has harmed the integrity of the legal profession.
Based on our review of the record as well as respondent's oral argument before this court, we find respondent was erroneous in his contention that the settlement was confected in December 1998, prior to his discharge. Nevertheless, we conclude he did not intentionally act in an effort to disadvantage his client. While respondent's state of mind does not excuse his actions, it serves to mitigate the sanction to be imposed for his misconduct. In re: Sharp, 01-1117 (La.12/7/01), 802 So.2d 588. Additionally, we observe that respondent's actions caused no significant harm to his client, as the settlement was ultimately not enforced against her.
Under the facts of this case, we conclude the appropriate sanction for respondent's misconduct is a three-month suspension from the practice of law. In light of the mitigating circumstances, we will defer this suspension in its entirety and place respondent on probation for a period of two years, with the provision that any misconduct during the probationary period may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Johnnie A. Jones, Jr., Louisiana Bar Roll number 1083, be suspended *671 from the practice of law in Louisiana for a period of three months. It is further ordered this suspension shall be fully deferred, and respondent shall be placed on probation for a period of two years. Any misconduct during the probationary period may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
JOHNSON, Justice, dissenting.
While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held that the manifest error standard is applicable to the committee's factual findings. See In re: Dunn, 02-2165 (La.11/8/02), 831 So.2d 889; In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In this case, following a formal hearing on the merits, the hearing committee made certain factual findings and ultimately recommended that the formal charges against Mr. Jones be dismissed. A majority of the disciplinary board agreed. Based on my review, I believe that the record supports the findings of fact made by the hearing committee, and in my opinion, the disciplinary board reached the correct result in dismissing the formal charges. Hence, I would affirm the board's disposition.
NOTES
[1] Respondent also testified that State Farm issued a settlement check in late December 1998, though in an incorrect amount, and that the check issued on January 25, 1999 was simply a replacement check in the correct amount. There is no support for this contention in the record.