985 So.2d 781 (2008)
Michael V. CLEGG, APLC
v.
USAGENCIES INSURANCE COMPANY.
No. 2007 CA 1781.
Court of Appeal of Louisiana, First Circuit.
March 26, 2008.
*782 Brent B. Boxill, Baton Rouge, Louisiana, for Plaintiff/Appellant, Michael Clegg, APLC.
Van R. Mayhall, Jr., Jerry L. "Jay" Stovall, Jr., Baton Rouge, Louisiana, for Defendant/Appellee, USAgencies Insurance Co.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
*783 McCLENDON, J.
Plaintiff, Michael V. Clegg, APLC (Clegg) appeals a judgment sustaining a peremptory exception raising the objection of no cause of action and dismissal of Clegg's breach of contract claim against defendant, USAgencies Insurance Company (USA). We affirm in part, reverse in part, and remand.

FACTUAL AND PROCEDURAL BACKGROUND
Clegg's petition, filed on October 17, 2006, asserted that an oral agreement was reached between the parties on December 8, 2005, and memorialized in the contract attached to the petition. The attached contract provided that Clegg would be the exclusive agent in Louisiana for USA "for all litigation files that are assigned after January 1, 2006." The agreement was to commence on December 15, 2005, with a term of two years and the possibility of extensions. The contract provided for expenses, and listed certain fees to be paid (1) at the time a file was received, (2) after taking depositions, (3) for trial preparation, and (4) on an hourly basis during trial. The attached contract bore the signature of a representative of Clegg, dated December 8, 2005, but no signature by a representative of USA. Allegedly, the contract or agreement was breached when USA sent files to other attorneys rather than Clegg. The petition stated that the damages suffered due to the breach were "in the form of lost revenue and/or profit from all files which have been assigned to any other attorneys in the State of Louisiana since January 1, 2006." Clegg further quantified the damages as "all amounts [USA] pays for the handling of litigation files to attorneys in the State of Louisiana from January 1, 2006 through December 31, 2007.
USA answered denying that any agreement was reached. Subsequently, USA filed the exception of no cause of action. A hearing on the exception was held on May 21, 2007.
During the hearing, in answer to an argument asserted in pleadings that the contract, whether oral or written, was one of labor or employment, and not an agreement to represent a client, the trial court found that the facts evinced an agreement arising from an attorney-client relationship. Also during the hearing, the trial court solicited information from Clegg's counsel that no fees were owed for services rendered, and that the damages sought were for fees not earned by Clegg. Although the trial court agreed with Clegg's argument that some of the cases cited by USA relied on outdated rules governing attorney conduct, the court noted the newer cases reiterated the traditional holding that the attorney-client relationship is severable at the client's will. At the conclusion of argument, the trial court held that, despite the existence of any fee based agreement or contract between a client and his attorney, a client had the right to discharge the attorney at any time. Therefore, the trial court granted the exception of no cause of action. Neither before, nor after the ruling, did Clegg ask for an opportunity to amend the petition pursuant to LSA-C.C.P. art. 934. By judgment signed May 31, 2007, Clegg's suit was dismissed. Clegg appealed.

APPLICABLE LEGAL PRECEPTS

Attorney-Client Relationship
An attorney-client relationship is traditionally considered one of mandate or agency, which is generally subject to the principal's withdrawal at any time. Succession of Wallace, 574 So.2d 348, 351-52 (La.1991) (scholarly explanation of public policy reasons underlying the client's right *784 of withdrawal and how the right developed over time under different rationales, including jurisprudential rule and various versions of disciplinary rules governing the practice of law); Barranger, Barranger and Jones v. Gaines, 286 So.2d 474, 476 (La.App. 1 Cir.1973), writ denied, 288 So.2d 647 (La.1974); Sanders v. Federal Apartments Limited Partnership, 31,562, p. 4 (La.App. 2 Cir. 2/24/99), 733 So.2d 45, 47; see LSA-C.C. art. 3025; Rules of Professional Conduct Rule 1.16(a)(3). In 2003, after the initial adoption of the current Rules of Professional Conduct for attorneys, which were reenacted in 2004, our supreme court reaffirmed a client's "absolute right to discharge his or her lawyer at any time." In re Jones, XXXX-XXXX, p. 5 (La.10/21/03), 859 So.2d 666, 670. In Francis v. Hotard, XXXX-XXXX, p. 3 (La. App. 1 Cir. 3/30/01), 798 So.2d 982, 985, writ not considered, XXXX-XXXX (La.6/22/01), 793 So.2d 1263, this court also confirmed the right, even if the attorney and client had a contract. In Jones, the supreme court explained that "an attorney may not `force his continued representation [on] a client....'" Jones, XXXX-XXXX at p. 6, 859 So.2d at 670, quoting Scott v. Kemper Insurance Company, 377 So.2d 66, 70 (La.1979). "The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists." Sanders, 31,562 at p. 4, 733 So.2d at 47.
Based on a client's right to terminate counsel at any time, an ancillary rule developed defining the attorney's right to sue for fees. "When an attorney is discharged before entirely earning his fee, he cannot rely on commercial laws to collect" fees for unearned services. Salley & Salley v. Stoll, 2003-807, p. 6 (La.App. 5 Cir. 12/9/03), 864 So.2d 698, 703; Sanders, 31,562 at p. 4, 733 So.2d at 47-48. If the client made an advance payment, the attorney must return "any advance payment of fee or expense that has not been earned or incurred." Rules of Professional Conduct, Rule 1.16(d). However, despite the unenforceability of "contract provisions on compensation" as a basis for collecting unearned fees, the discharged attorney does remain "entitled to compensation for services actually rendered prior to his discharge." Keene v. Reggie, 96-740, p. 11 (La.App. 3 Cir. 10/22/97), 701 So.2d 720, 727; Barranger, Barranger and Jones, 286 So.2d at 476; Salley & Salley, 2003-807 at p. 6, 864 So.2d at 703; Sanders, 31,562 at p. 4, 733 So.2d at 48. When fees are owed, the provisions of a prior reasonable fee schedule or agreement may be used as a guide to calculate the amount of fees owed. See Scott, 377 So.2d at 70-71; Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 117-18 (La.1979) (on rehearing); Salley & Salley, 2003-807 at pp. 6-7; 864 So.2d at 703; Lester v. Lester, 516 So.2d 219, 221 (La.App. 4 Cir.1987). In the absence of a prior fee agreement, the fees are traditionally set based on quantum meruit. See Barranger, Barranger and Jones, 286 So.2d at 476; Salley & Salley, 2003-807 at pp. 6-7; 864 So.2d at 703. Of course, with or without a contract, an award of earned fees is subject to the court's review for reasonableness. Saucier, 373 So.2d at 117-18; see Salley & Salley, 2003-807 at p. 7, 864 So.2d at 703.

No Cause of Action
The purpose of the peremptory exception raising the objection of no cause of action is to determine the sufficiency in law of the petition. Silvis v. Mitchell, 96-2528, p. 4 (La.App. 1 Cir. 11/7/97), 704 So.2d 25, 27. In ruling on a peremptory exception pleading the objection of no cause of action, the court must determine whether the law affords any relief to the claimant if the factual allegations in the petition and annexed documents were *785 proven at trial. Cardinale v. Stanga, XXXX-XXXX, p. 3 (La.App. 1 Cir. 9/27/02), 835 So.2d 576, 578; see LSA-C.C.P. art. 853 (statement in pleading may be adopted by reference). No other evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. In reviewing a trial court's ruling sustaining an exception of no cause of action, the reviewing court accepts all the well-pled factual allegations of the petition, and the facts contained in the annexed documents, as true. Cardinale, 01-1443 at p. 3, 835 So.2d at 578. The review is conducted de novo because the exception raises a question of law, and the lower court's decision is based only on the sufficiency of the petition. Perrin v. Succession of Perrin, XXXX-XXXX, pp. 4-5 (La.App. 1 Cir. 6/27/03), 861 So.2d 582, 584. If a petition fails to state a cause of action, but the impediment may be removed by amendment, the court shall allow the plaintiff an opportunity to amend. LSA-C.C.P. art. 934. However, if the attempt would be in vain, no opportunity for amendment is required and the action shall be dismissed. See LSA-C.C.P. art. 934; Silvis, 96-2528 at pp. 4-5 & 6 n. 4, 704 So.2d at 28 & 29 n. 4.

ANALYSIS
Initially, we note that despite an argument that the contract at issue was one of employment or labor and did not evidence an attorney-client relationship, nothing in the petition or attached alleged contract provide a basis for a finding that USA agreed to hire Clegg as an employee or in the position of in-house counsel for USA.[1] Rather, the facts asserted in the petition and the provisions of the alleged contract support the finding of a traditional attorney-client relationship. Even if we assume the following contractual provision: "Clegg and staff will be the exclusive attorneys for [USA] in the State of Louisiana for all litigation files that are assigned after January 1, 2006," could be interpreted as a guarantee that files would be assigned to Clegg, a reading of the alleged contract provisions as a whole shows that the agreement was one of agency between an attorney and client, not employer and employee. Thus, from our de novo review of the record on appeal, we agree with the trial court's finding.
In addition, after reviewing the record in light of the existing applicable law, we agree with the trial court's grant of the exception of no cause of action. Even assuming the contract guaranteed that files would be assigned to Clegg, the damages claim was for legal fees paid to other attorneys for services they rendered. It is undisputed that the fees claimed by Clegg were unearned and did not flow from services actually rendered by Clegg to USA. Based on the client's right to cease using the services of a particular attorney, which logically includes the client's right to send future work to another attorney, a claim for unearned fees, even if denominated as lost revenue, is not allowed by the Louisiana jurisprudence cited above or contemplated by the Rules of Professional Conduct, Rule 1.5(f) & 1.16(d). Thus, no cause of action exists for the collection of the unearned fees prayed for by Clegg.
Clegg also argues that USA's failure to formally terminate the contract allows Clegg to assert a cause of action based on a breach of contract and recover the lost *786 revenue. We disagree. Whether the contract was terminated[2] informally or merely breached by USA when it did not use Clegg's services after January 1, 2006, the relief sought arose from legal fees contemplated by the alleged contract, but not actually rendered or earned by Clegg. See Sanders, 31,562 at p. 6, 733 So.2d at 49.
However, despite the failure to state a cause of action for the return of unearned fees, Clegg asserts that the petition can be amended to state a cause of action for detrimental reliance based upon the operative facts of the underlying transaction. Thus, we affirm the part of the judgment sustaining the exception of no cause of action, reverse the dismissal of the suit, and remand the case to allow the plaintiff an opportunity to amend. See LSA-C.C.P. art. 934; Leboeuf v. Wal-Mart Stores, Inc., 2004-2260, pp. 9-10 (La. App. 1 Cir. 4/5/06), 934 So.2d 790, 796-97, writ denied, XXXX-XXXX (La.6/23/06), 930 So.2d 987.
For these reasons, we affirm the judgment in part, reverse in part, and remand for further proceedings consistent with this opinion. The costs of the appeal are assessed to plaintiff, Michael V. Clegg, APLC.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Although Clegg attempted to argue in post-petition pleadings that the contract was one of direct employment, Clegg's counsel, in answer to a question by the trial court, seemingly agreed that the contract was for an attorney-client relationship and not a contract of employment or labor.
[2] We note that the initial two year term of the contract has now passed.